Argued March 1, reversed June 16, petition for rehearing
denied July 14, 1965

# SMITH KLINE & FRENCH LABORATORIES *v.*
# STATE TAX COMMISSION

403 P. 2d 375

*James H. Clarke,* Portland, argued the cause for appellant. With him on the briefs were Koerner, Young, McColloch & Dezendorf, James C. Dezendorf and Marshall C. Cheney, Jr., Portland.

*Theodore W. deLooze,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Robert Y. Thornton, Attorney General, Salem, and William M. Ferguson, Attorney General, State of Kansas, Topeka, as amicus curiae in support of respondents, on behalf of the State of Kansas.

*William D. Dexter,* Assistant Attorney General, Lansing, Michigan, argued the cause and filed a brief amici curiae. With him on the brief were Attorneys General of Alaska, Arizona, Georgia, Hawaii, Kansas, Michigan, Minnesota, Missouri, South Dakota, Washington, and the Commonwealth of Pennsylvania.

Halfpenny, Hahn and Ryan and Harold T. Halfpenny, Richard F. Hahn, James F. Flanagan and Mary M. Shaw, Chicago, Illinois, filed a brief as amicus curiae, representing National Association of Wholesalers and Automotive Service Industry Association.

Charles H. Schreyer, Bloomfield, Connecticut, as amicus curiae, filed a brief for 22 state associations.

MacLean, Seaman & Laing, Lansing, Michigan, filed a brief amicus curiae on behalf of Michigan Retailers Association.

Before McAllister, Chief Justice, and Perry, Sloan, O'Connell, Goodwin, Denecke and Holman, Justices.

DENECKE, J.

We adopt the following portion of the opinion of the Oregon Tax Court (1 OTR Adv Sh 491 (1964)):

"This is a suit to set aside defendant's assessment of corporation income tax against plaintiff for the years 1955, 1956, 1957, and 1958 on the ground that Public Law 86–272 prohibits Oregon from imposing such tax on plaintiff.

*"Facts*

"The parties stipulated that the material facts of the case are substantially as follows:

"Plaintiff, a Pennsylvania corporation, has its principal office in Philadelphia. It manufactures and sells ethical pharmaceutical products in interstate commerce. In Oregon it has no office, no office equipment, no stock of goods, no telephone listing, no telephone answering service, no mailing address, and no automobile. To conduct its only activity in Oregon, plaintiff employs five or six resident professional representatives, so-called 'detail men.' It reimburses these representatives for the use of their own cars and other expenses and provides them with samples and sales materials.

"Under supervision of its Seattle office, plaintiff's detail men visit hospitals, other institutions, doctors, and retail druggists, as well as wholesalers handling plaintiff's products, for the purpose of

explaining the use and usefulness of plaintiff's products and encouraging their use and sale. They do not solicit orders (except upon rare occasions) but rather promote the use of plaintiff's products. The detail men report daily to plaintiff concerning the professional reception of its products. No telephone listing of the representatives identifies them as plaintiff's agents, though their business cards carry their home telephone numbers. At their homes the detail men maintain stocks of samples for use in their promotional work.

"Among ultimate users only state institutions deal directly with plaintiff. All other ultimate users purchase from retailers. Retailers, in turn, purchase from wholesalers, whose salesmen solicit orders from druggists, hospitals, and institutions. Oregon wholesalers place orders with plaintiff at its principal office, where they are accepted.

"In 1958, defendant requested that plaintiff pay Oregon's corporation net income tax for the years 1955 through 1958, under the Oregon Corporation Income Tax Act of 1955. In May of that year, plaintiff filed its returns and paid tax for those four years. It computed its tax by the three-factor apportionment formula with zero as its Oregon sales and property factors. In August, 1959, defendant issued proposed deficiency assessments in which it recomputed plaintiff's tax, using the three-factor formula with a zero factor for property only. In September, 1959, Congress passed P.L. 86–272. Defendant made its assessments final in August, 1960. In September, 1960, plaintiff formally appealed to defendant to set aside its assessments and to refund the tax already paid on the ground that P.L. 86–272 exempted plaintiff from Oregon corporate income taxation. After a formal hearing in 1962, defendant, in its Opinion and Order No. I-62-14, affirmed its assessments and denied plaintiff's refund claims because plaintiff's activities in Oregon did not bring plaintiff within the exemption provided by P.L. 86–272.

"Plaintiff then filed its complaint in this court to set aside the commission's order and assessment. In its answer, defendant raised for the first time the additional issue that P.L. 86–272 is unconstitutional. After plaintiff replied, defendant requested, under ORS 305.425, that this court remand the case to the tax commission for its formal consideration of the constitutional issue. Plaintiff informally acquiesced in the remand. This court remanded the case to the commission but retained jurisdiction to proceed without the filing of new pleadings. Thereafter, by its Opinion and Order No. I-63-19, the commission held P.L. 86–272 unconstitutional.

"* * * * *

### "Issues

"This case presents three issues:

"(1) Did plaintiff's activities in Oregon bring it within the exemption of P.L. 86–272?

"(2) Is P.L. 86–272 constitutional?

"* * * * *

"P.L. 86–272 prohibits the states from levying and collecting taxes measured by net income from natural and artificial persons engaged in interstate commerce whose only business activity within the taxing state is the solicitation of orders for the sale of tangible personal property by either the soliciting firm or a customer of the soliciting firm, when any orders thereby obtained are accepted and filled outside the taxing state. This prohibition is applicable after the adoption of the act in September, 1959, and to assessments then pending.

"* * * * *

### "First Issue: Construction of P.L. 86–272

"In making its assessments, defendant strictly construed the exemption granted by P.L. 86–272 and found that plaintiff's Oregon activities are not that solicitation of orders which the statute exempts. Defendant contends that P.L. 86–272 creates an 'island of immunity' around the solicitation activities expressly described in the statute; that

solicitation of orders requires that an actual order be sought by an individual calling upon a potential customer; and that the activities of plaintiff's employees, which merely encouraged the placing of orders with the wholesale drug firms selling plaintiff's products, do not qualify plaintiff for exemption.

"On the other hand, plaintiff contends that the act is properly construed as a 'minimum activity' statute—that it exempts all corporations the activities of which do not exceed solicitation of orders. Furthermore, plaintiff contends that its Oregon employees do solicit orders for plaintiff's customers within the meaning of P.L. 86–272 and that the statute does not require the receipt of an order by plaintiff's employees so long as they are soliciting and encouraging the purchase of plaintiff's products.

"In this court's opinion, plaintiff's activities in Oregon meet the statutory requirements for exemption. Congressional committee reports support this conclusion. Conference Report No. 1103, 86th Cong., 1st Sess. (1959); Select Committee on Small Business, *The Problems Faced by Small Business in Complying With Multi-State Taxation of Income Derived From Interstate Commerce,* S. Rep. No. 453, 86th Cong., 1st Sess. (1959) p 13; Comm. on Finance, *State Taxation of Income Derived From Interstate Commerce,* S. Rep. No. 658, 86th Cong., 1st Sess. (1959). These reports show that Congress intended to exempt not only the specifically described phase of interstate sales efforts but also all lesser, included phases.

"Furthermore, the nature of plaintiff's business makes its activities in Oregon the equivalent of solicitation of orders in other, less technical businesses. Ethical drugs are generally purchased by the public from retail druggists. The drug to be purchased is selected, not by the purchaser, but by his physician. An ethical drug sales effort comparable to direct solicitation of orders for shoes,

valves, or cement requires 'selling' the physician on the wisdom of prescribing the particular product for his patient. By soliciting the stocking of plaintiff's products by druggists and the prescription of those drugs by physicians, plaintiff's detail men perform the same sales function in plaintiff's field that salesmen soliciting actual orders from the ultimate user perform in other businesses. A realistic legal and factual interpretation of P.L. 86–272 requires exemption of plaintiff from Oregon corporation income tax."

Defendant Commission in its brief and oral argument contends: "Public Law 86–272 is an unconstitutional attempt by Congress to adopt new rules of 'nexus' or due process under the authority of the Commerce Clause, usurping the power of the judiciary." The Commission argues that the Supreme Court has held that certain minimum contacts between a business and a state are a sufficient nexus to enable the state to tax a portion of the income of that business without violating the Due Process Clause but that Congress, by P.L. 86–272, has increased the minimum contacts justifying a state tax and, therefore, Congress is attempting to determine what is due process and this is in violation of the court's exclusive domain.

■■ We find the congressional action not to violate the doctrine of separation of powers or the Due Process Clause. The minimum contacts for jurisdictional nexus have not been changed by P.L. 86–272. Congress cannot change the requirements of the Due Process Clause. Instead, Congress has found that it is wise, for the protection of certain business activities from the possible burdens of multistate taxation, to limit state taxation of interstate commerce. The Congress has the power, under the Commerce Clause, to remove or alleviate state-imposed burdens on interstate

commerce. The boundaries of the federal commerce power do not coincide with the due process limits of state taxing power. Instead, the two powers overlap, and in the area of concurrence, the states may act unless Congress specifically prohibits.

■ The remaining question, then, is whether P.L. 86–272 is in excess of the power of Congress to regulate commerce.[①] The Tax Court held the law invalid upon these grounds.

The roots of defendant's argument and of the passage of P.L. 86–272 are *Spector Motor Service v. O'Connor,* 340 US 602, 71 S Ct 508, 95 L ed 573 (1951), and *Northwestern Cement Co. v. Minnesota,* 358 US 450, 79 S Ct 357, 3 L ed2d 421, 67 ALR2d 1292 (1959). The earlier case decided that a Connecticut corporate excise tax could not be collected from a foreign corporation whose entire income was from the carriage of goods in interstate commerce. The state only attempted to assess the tax upon income determined by an apportionment formula which was not discriminatory. The Connecticut court found that the tax was solely upon the privilege of doing business in the state. The Supreme Court stated: "They [the states] delegated to the United States the exclusive power to tax the privilege to engage in interstate commerce * * *." 340 US at 608.

Eight years later, in the *Northwestern Cement* case, the Court upheld the validity of a Minnesota net income tax upon a foreign corporation whose entire

---

[①] The Commission also contends that the federal statute "is in violation of the Fifth Amendment of the United States Constitution, because it is arbitrary in nature, and discriminatory against the local competitors of those granted an exemption under the terms of the statute." This ground was not alleged in the pleadings and, therefore, will not be considered.

income was from operations in interstate commerce. The *Spector* case was distinguished upon the ground that in *Spector* the state tax was upon the privilege of engaging in interstate commerce. The Court held: " '[a] tax on net income from interstate commerce, as distinguished from a tax on the privilege of engaging in interstate commerce, does not conflict with the commerce clause.' * * *. The taxes are not regulations in any sense of that term." 358 US at 461.

P.L. 86–272 was passed because of concern with the possible effects of this decision.

The essence of the Tax Court's and the Commission's argument is: In *Spector* the state excise tax based upon net income was an undue burden on interstate commerce; in *Northwestern Cement* the state income tax was not an undue burden upon interstate commerce. Therefore, the Tax Court opined:

> "* * * The logical and practical distinction between *Spector* and *Northwestern States-Stockham,* then, is that in the former the burden was imposed on interstate commerce, while in the latter it was not. Furthermore, the logical and practical conclusion is that, by its nature, a net income tax is not imposed on interstate commerce but upon the profits of a business after the proceeds of its commerce have left interstate commerce." 1 OTR Adv Sh at 502.

This is an "either-or" approach; if the judiciary decides that the state tax is not in violation of the federal power to regulate commerce, the federal legislature has no power under the Commerce Clause to prohibit such taxation. Under this theory, there is no zone of overlap in which states can tax until and unless the Congress, acting under its commerce power, legislates to the contrary.

■ We cannot agree with the decision of the Tax Court or the contention of the Commission. In the field of the regulation of commerce, as distinguished from the taxation of commerce, judicial approval of state action does not thereby exclude subsequent, or even contemporaneous, federal legislative action. In *Kelly v. Washington,* 302 US 1, 58 S Ct 87, 82 L ed 3 (1937), Foss Company sought to have a Washington statute relating to the regulation of tugs declared invalid as an encroachment upon the federal power to regulate commerce, particularly as Congress had already enacted laws regulating these same tugs. The Court held the state and federal laws were not in complete conflict and that some of the state laws were valid. The Court stated:

> "Under our constitutional system, there necessarily remains to the States, until Congress acts, a wide range for the permissible exercise of power appropriate to their territorial jurisdiction although interstate commerce may be affected. * * *" (Emphasis added.) 302 US at 9-10.

This principle was recently approved in *Florida Avocado Growers v. Paul,* 373 US 132, 83 S Ct 1210, 10 L ed2d 248, 256 (1963).

There is no reason why the same principle should not be applicable in the field of the taxation of interstate commerce. In *Northwestern Cement* the Court simply held that a state income tax upon revenues derived from interstate commerce "does not offend constitutional limitations upon state interference with such commerce." 358 US at 459. The Court was deciding the extent of the restrictions imposed by the *unexercised* delegation of power made by the Commerce Clause. In the instant case the power delegated has been exercised. The views of the Court about the

constitutionality of P.L. 86–272 seem to be revealed in this general observation made in the *Northwestern Cement* opinion:

"* * * Commerce between the States having grown up like Topsy, *the Congress meanwhile not having undertaken to regulate taxation of it,* the States having understandably persisted in their efforts to get some return for the substantial benefits they have afforded it, there is little wonder that there has been no end of cases testing out state tax levies. * * *" (Emphasis added.) 358 US at 457.

*Northwest Airlines v. Minnesota,* 322 US 292, 64 S Ct 950, 88 L ed 1283, 153 ALR 245 (1944), held that the domiciliary state could levy a personal property tax upon commercial airliners. However, in the opinion by Mr. Justice Frankfurter he stated:

"* * * Congress of course could exert its controlling authority over commerce by appropriate regulation and exclude a domiciliary State from authority which it otherwise would have because it is the domiciliary State. * * *" 322 US at 298.

In Mr. Justice Jackson's concurring opinion he stated:

"Congress has not extended its protection and control to the field of taxation, although I take it no one denies that constitutionally it may do so. It may exact a single uniform federal tax on the property or the business to the exclusion of taxation by the states. [From the context of the opinion it is assumed it refers to airline property or business.] It may subject the vehicles or other incidents to any type of state and local taxation, or it may declare them tax-free altogether. Our function is to determine what rule governs in the absence of such legislative enactment." 322 US at 303-304.

■■ A state can levy an income tax upon revenues derived from interstate commerce. This is not because

such tax is in a different area than the congressional power "to regulate commerce"; it is because, in the absence of congressional action to the contrary, both the state and federal legislatures can legislate in this area. In the absence of congressional action to the contrary, the only restriction upon the states is judicially imposed,—state action must not *unduly* burden interstate commerce. Congress now has acted; its statute is contrary to the state action; the federal statute is valid and the state statute must yield.[2]

Reversed.

---

[2] The Tax Court was concerned:

"* * * If, as interstate commerce Congress can prohibit a state tax on net income derived from interstate commerce, then, Congress can prohibit all state taxation under its broad power to regulate intrastate affairs affecting interstate commerce. * * *. Stripped of the power to tax, the sovereignty of states is a hollow shell. * * *" 1 OTR Adv Sh at 509.

Whether this prediction is well founded or not, we are convinced by the decisions of the United States Supreme Court, new and old, that the congressional power over the taxation of the revenues of interstate commerce is supreme.

International Shoe Company v. Cocreham, 246 La 244, 164 S2d 314, cert den sub nom Mouton v. International Shoe Co., 379 US 902, 85 S Ct 193, 13 L ed2d 177 (1964), and State ex rel. Ciba Pharmaceutical Products, Inc. v. State Tax Commission, 382 SW2d 645 (Mo 1964), held P.L. 86–272 valid.