## ATLAS FOUNDRY & MACHINE CO. v. STATE TAX COMMISSION

Denton G. Burdick, Jr., Portland, and C. John Newlands, Portland, argued the cause for plaintiff. Denton G. Burdick, Jr., Portland, C. John Newlands, Portland, and Hutchinson, Schwab & Burdick, Portland, submitted a brief for plaintiff.

Walter J. Apley, Assistant Attorney General, Salem, argued the cause and submitted a brief for defendant.

Decision for plaintiff rendered September 29, 1965.

EDWARD H. HOWELL, Judge.

Plaintiff filed this suit to set aside an order of defendant tax commission assessing corporate income taxes for the years 1955 to 1961, inclusive.

Plaintiff is a Washington corporation engaged in

manufacturing iron and steel castings and has customers in Oregon.

Plaintiff contends that it is exempt from corporate income taxes by virtue of Public Law 86-272 (hereinafter called P.L. 86-272) (15 USCA § 381) which provides in part as follows:

> "Sec. 101. (a) No State, or political subdivision thereof, shall have power to impose, for any taxable year ending after the date of the enactment of this Act, a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person during such taxable year are either, or both, of the following:
>
> "(1) the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State; and
>
> "* * * * * *"

P.L. 86-272 was held constitutional by the Supreme Court of Oregon in the recent case of *Smith Kline & French v. Tax Com.*, 241 Or 50, 403 P2d 375 (1965).

■ Whether plaintiff's Oregon activities fall within the exemption allowed companies engaged in interstate commerce under P.L. 86-272 requires a detailed statement of the facts.

The castings manufactured by plaintiff at its foundry in Tacoma, Washington, were made to special order and for a particular customer.[1] The Oregon customer prepared a drawing of the item desired, sent it to plaintiff at Tacoma and plaintiff would

---

[1] A very small percentage of plaintiff's business consists of the sale of standard items such as manholes and utility castings. These are handled by orders sent to Tacoma and filled there.

quote the customer a price by mail. If the price was satisfactory the customer sent a purchase order back, usually by mail, but occasionally the orders were handed to plaintiff's personnel for mailing. The purchase order was accepted in Tacoma and a copy of the acceptance mailed to the Oregon customer with another copy to the plaintiff's salesman for Oregon.

The manufactured castings were delivered to the Oregon customer either by common carrier or plaintiff's two trucks, which made about two trips per week. The trucks were also used to back-haul foundry supplies from Portland to Tacoma. These supplies were purchased in Tacoma and were not negotiated in Oregon.

After shipment of the manufactured items to Portland, the Tacoma office would bill the Oregon customer who would mail the check to Tacoma.

Plaintiff had one employee, Mr. Caldwell, who was regularly active in Oregon. He lived in Vancouver, Washington, but spent two-thirds of his time in Oregon promoting goodwill and sales. Generally, his work consisted of maintaining contact with plaintiff's customers to encourage them to request bids from his firm. He had no technical background, did not write orders, could not authorize minor repairs. If a customer had a complaint he ordinarily would contact plaintiff's office in Tacoma, but if the salesman was present they would advise him and he would send this information to Tacoma. He carried no samples because of the nature of the plaintiff's specialized manufacturing business which depended on particular orders from the buyers.

Two other members of plaintiff's firm came to Oregon about once every six weeks to visit the cus-

tomers, play golf and generally promote goodwill for plaintiff.

An inspector and a works manager also came to Portland occasionally "to coordinate our inspection department up there with the wants of the customer." On occasion, they came because of specific complaints about defective castings, but ordinarily the complaints were handled by telephone or letter to Tacoma.

In 1955 and 1956 plaintiff maintained an office in Portland. In 1957 the office was transferred to Vancouver, Washington. The office in Portland was used only by Mr. Caldwell, the salesman, and consisted of a desk, chair and telephone in a small room rented from a warehouse company. The telephone was answered by a girl employee of the warehouse company. The purpose of the office was to provide a place where plaintiff's customers could contact Mr. Caldwell. The Portland telephone book listed "Atlas Foundry & Mach. Co." with Mr. Caldwell's name as Portland representative together with the address and telephone number.

During the years involved, with the exception of the office furniture in 1955 and 1956, plaintiff owned no property in Oregon and maintained no inventory here. No installation was performed by plaintiff.

There is a dearth of cases and authorities of any substantial assistance in interpreting P.L. 86-272 to decide whether plaintiff's activities are within the exemption allowed by the Act. *State ex rel CIBA Pharmaceutical Products, Inc. v. State Tax Commission,* (Mo.) 382 SW2d 645, 5 STC ¶ 250-148 (1964).

■ The legislative history of P.L. 86-272 clearly indicates that it was the intention of Congress to declare that a taxable nexus was established in the host state if a sales office was maintained in that state.

The Talmadge Amendment eliminated a paragraph from the original bill which would have granted immunity to a sales office. CCH Analysis of P.L. 86-272, § 13-001 et seq.; 46 Va L Rev 297, 315; Beaman, *Paying Taxes To Other States*, (1963) Ch 6, p 15. In addition to the elimination of a sales office in the first part of the Act by the Talmage Amendment, section (c) of the Act[2] specifically allows a sales office to be maintained if it is by an independent contractor and plaintiff does not claim an exemption in this category.

It can be argued that the office involved here was small, that it contained only a few items of furniture and no clerical personnel were employed, but it is this court's opinion it constituted a sales office. This is certainly the impression one would receive from the advertisements in the telephone book for the years 1955 and 1956.

There is nothing in the activities of Mr. Caldwell, the salesman, which would exceed the activities allowable under P.L. 86-272. In fact his activities are more in the nature of promoting goodwill for the plaintiff with its customers and less than solicitation of orders because plaintiff's business is such that it depends on specific requests from the customer for castings.

P.L. 86-272 imposes a minimum standard of activities. In *Smith Kline & French v. Tax Com., supra,* the Oregon Supreme Court adopted as part of their

---

[2] "(c) For purposes of subsection (a), a person shall not be considered to have engaged in business activities within a State during any taxable year merely by reason of sales in such State, or the solicitation of orders for sales in such State, of tangible personal property on behalf of such person by one or more independent contractors, or by reason of the maintenance of an office in such State by one or more independent contractors whose activities on behalf of such person in such State consist solely of making sales, or soliciting orders for sales, of tangible personal property."

decision the findings of the Oregon Tax Court. That decision stated in part:

> "* * * 'These [Senate Reports] show that Congress intended to exempt not only the specifically described phase of interstate sales efforts but also all lesser, included phases'." 241 Or at 55.

As the customers' orders are sent to Tacoma for approval or rejection the plaintiff qualifies under that portion of P.L. 86-272.

The statute also requires that the orders, if approved, be filled by the seller by shipment *or delivery*. Plaintiff uses both common carriers and its own trucks to deliver the castings to the Oregon customers. The use of its own trucks would seem to be permissible as the statute allows "delivery," which would imply that the vendor may use his own conveyances. Beaman, *Paying Taxes To Other States*, (1963) Ch 6, p 18. The fact that the plaintiff at times used its trucks to haul foundry supplies back to Tacoma from Oregon would be immaterial. The interstate shipment of the goods in question had been completed. It would be the same as if plaintiff had a common carrier pick up some supplies after it had delivered plaintiff's goods in Oregon. In addition, all the purchasing of these supplies, according to the testimony, had been accomplished in Tacoma.

The plaintiff's inspector and works manager came to Portland about once every four to six weeks. They came to meet the customers' inspectors, to coordinate plaintiff's inspection department with the customers' inspection departments and generally promote goodwill between plaintiff and the Oregon customers.

■ It is the court's conclusion that these activities are incidental to the indirect solicitation of orders,

and are lesser included phases of solicitation. Consequently they are exempt under P.L. 86-272 and the decision in *Smith Kline & French v. Tax Com., supra.*

In summary, the plaintiff is not exempt from corporate income taxes for the years 1955 and 1956, but is exempt under the provisions of P.L. 86-272 for the years 1957 to 1961, inclusive.