## IRON FIREMAN MANUFACTURING CO. *v.*
## STATE TAX COMMISSION

Thomas S. Moore, Portland, Oregon, represented plaintiff.

Theodore W. de Looze, Assistant Attorney General, Salem, represented defendant.

Decision for plaintiff rendered May 24, 1967.

EDWARD H. HOWELL, Judge.

In its Oregon corporate excise tax returns for 1960 and 1961 plaintiff allocated a portion of its net income to the State of Washington. The defendant commission disallowed the allocation on the grounds that plaintiff's activities would be exempt from taxation in Washington under Public Law 86-272. If plaintiff's activities in Washington are protected from taxation by Public Law 86-272 the plaintiff cannot allocate a portion of its total income to that state. If plaintiff's Washington activities exceed those allowed by Public Law 86-272 it is entitled to allocate a portion of the total net income to the State of Washington. This is the only issue to be resolved.

The material part of Public Law 86-272 states:

"Sec. 101. (a) No State, or political subdivision thereof, shall have power to impose, for any taxable year ending after the date of the enactment of this Act, a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person during such taxable year are either, or both, of the following:

"(1) The solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State; * * *"

Prior to and during 1960 and 1961 plaintiff was engaged in manufacturing air frame components, subassemblies and assemblies, primarily for Boeing Aircraft Company in Seattle, Washington. Plaintiff and Boeing had a very close working arrangement because

of the nature of plaintiff's highly specialized business of manufacturing airplane parts.

Orders were not solicited as in the normal business arrangement because the two companies had been dealing with one another for years. The solicitation was indirect. Plaintiff's manager testified that he spent a substantial amount of time in the Boeing plant selecting the items that plaintiff wanted to bid and persuading Boeing Company that plaintiff was qualified to manufacture the desired items. Most of plaintiff's activities related to the structural parts and control assembly of the Boeing 727 airplane. Plaintiff's officials maintained extremely close liaison with the Boeing officials on the planning and design of the items so they would be both functional and "the most economical for producibility." After the parties had agreed on a contract for plaintiff to manufacture certain items the close working relationship continued between the specialists for both companies. Many of plaintiff's officials made regular trips to Boeing to take care of "manufacturing problems, installation problems, repair work, redesign discussions, production problems" which occurred after the work had started on the manufactured parts. Plaintiff's production engineers, production workers, metallurgists, quality control managers and assembly supervisors were some of the officials who spent several weeks of the year working closely with Boeing in Seattle.

Plaintiff's agreement with Boeing required plaintiff to retain a skilled metallurgist and plaintiff's manager, together with one of Boeing's officials, interviewed applicants and collaborated on the selection. The metallurgist before going to work for plaintiff would spend several weeks receiving indoctrination at

Boeing, learning Boeing's methods and requirements. Plaintiff also had a contract administrator who worked with Boeing on schedule planning, disputes, change incorporations, and with Boeing's legal counsel on changes. Plaintiff's engineers spent substantial time at the Boeing plant being coached in Boeing procedures. On some occasions plaintiff's assembly superintendent went to Boeing when the latter was conducting an equipment quality analysis which consisted of taking parts from the production line, checking every part in complete detail for trouble in some operation. On occasions plaintiff's specialists would confer with the Boeing engineers on items that plaintiff could not manufacture. Boeing in turn would send a team consisting of persons specializing in materials and purchasing, accounting, cost analysis, manufacturing, tooling and equipment to plaintiff's plant in Portland to work with plaintiff's employees.

Concerning the type of contract and the place of its execution, the former general manager of plaintiff's aircraft division testified as follows:

"Q Mr. Wright, on this contract negotiation were the orders, after you were up there talking to these people, were the orders then sent from Boeing down to Portland?

"A The formal order was, we would have a negotiation there and they would type out a letter, purchase order number so and so, this part, this price, this delivery schedule, it would all be typed out in a—assigning the purchase order number, defining the work, defining the price and the schedule and the Boeing men would sign it and I would sign it and then the buyer would issue purchase orders in accordance with this document, well, immediately following, as fast as they could, but those larger ones were always on a letter in the Boeing

plant and they would type it up while we were there."

After the parts had been manufactured they were almost always shipped to Seattle from Portland by commercial trucks.

■ Before considering whether plaintiff's activities in Washington go beyond the permissible solicitation of orders allowed by Public Law 86-272 it would appear that plaintiff is not within the purview of Public Law 86-272 for another reason. The latter statute allows exemption from local taxation if the solicited orders are sent outside of the state of Washington for approval or rejection and, if approved, the parts are delivered from a point outside of Washington. The parts were shipped to Seattle from Portland as required by the statute but it would appear from the above testimony of the plaintiff's former general manager that the contract for the purchase of the parts to be manufactured by plaintiff was executed in Seattle. The interstate characteristics of sending the solicited order outside of the state for approval is missing if the contract to buy certain manufactured parts is executed by the parties in Seattle. Walter H. Beaman, *Paying Taxes to Other States* (1963) § 6.14. The evidence is not as clear as it possibly could be but it appears from the above testimony that the contract was executed in Washington and that the sending of the orders to Portland for acceptance was more ministerial than contractual.

■ The main issue is whether plaintiff's activities in the state of Washington went beyond the permissible "solicitation of orders" allowed by Public Law 86-272 in which event plaintiff would not be exempt from Washington taxation and could apportion a part

of its income to Washington. This is the fourth case to come before this court involving what activities are permissible under the term "solicitation of orders." In *Smith Kline & French v. Tax Com.*, 241 Or 50, 403 P2d 275 (1965) *reversing* 1 OTR 532 (1964), and *Atlas Foundry v. Commission*, 2 OTR 200 (1965), it was decided that the taxpayer's activities did not exceed the solicitation of orders and that the taxpayers were exempt from local taxation under Public Law 86-272. In *Cal-Roof Wholesale v. Tax Com.*, 242 Or 435, 410 P2d 233 (1966) *affirming* 2 OTR 91, and *Herff Jones v. Commission*, 2 OTR 207 (1965), *affirmed* 247 Or 404, 430 P2d 998 (1967), the taxpayers' activities were held to be more than the solicitation of orders and consequently they were taxable by the host state. The facts in the above cases are reported in the citations mentioned and will not be repeated here with the exception of *Atlas Foundry* which the defendant contends should control the decision in this case.

In *Atlas Foundry* the taxpayer, a Washington corporation, manufactured special order castings for an Oregon customer. The plaintiff had one employee who lived in Vancouver but spent most of his time in Oregon, promoting sales and general good will. In addition, an inspector and works manager came to Portland occasionally to coordinate the manufacturing with the customers' needs and sometimes handled complaints about defective castings. There was no question involved concerning the mailing of the orders out of state for acceptance and the shipment of the manufactured product from out of state. This court found that the taxpayer's activities through its salesman constituted no more than the solicitation of orders allowable under Public Law 86-272. A question was presented as to whether the actions of the inspector

and .works manager in handling some complaints in Portland and in coordinating the requirements between the manufacturer and the customer in producing the castings constituted more than solicitation of orders so that plaintiff was outside the protection of Public Law 86-272 and taxable. This court found that these acts were incidental to the solicitation of orders and were lesser included phases of solicitation. *Smith Kline & French v. Tax Com., supra, Atlas Foundry v. Commission, supra.* See also, Beaman, *Paying Taxes to Other States,* § 6:18.①

■ There are no tests to be applied and each case must be decided on its own facts. The activities of plaintiff's numerous employees at the Boeing plant in Seattle clearly constitute more than the solicitation of orders and more than any lesser included phases of solicitation such as those involved in the *Atlas Foundry* case. It is obvious that plaintiff's association

---

① "The installation problem has some variations. Certainly installation would not be a taxable activity of the vendor if the vendee hired and paid a local firm to do it, even though the local firm is one recommended by the vendor. In such a case, however, it is common for the vendor to send a technician to answer questions and give advice to the local installer, if such advice is needed. If installation is a part of delivery, this would be irrelevant, but if it is held that installation by the·vendor is not protected, what about the advisory and supervisory service rendered by the technician to the customer who does his own installation? It should be recalled in this connection that the Committee report on Public Law 86-272 evidences a view that the courts might find that activities outside the literal scope of Public Law 86-272 might be insufficient as a minimum *nexus* for tax purposes. The report states:

"Whether business activities other than those described in the bill constitute a sufficient basis for the imposition by a State or political subdivision thereof of a net income tax on income derived from interstate commerce is left for future determination by the Congress, or in the absence of congressional action, by the courts." Beaman, *Paying Taxes to Other States,* § 6:18.

with Boeing, including the collaboration on hiring metallurgists, the indoctrination of plaintiff's engineers in Boeing procedures, and the extensive time spent at Boeing by plaintiff's numerous officials after the contracts had been executed constituted more than the solicitation of orders or any lesser included phases of solicitation.

Plaintiff's activities in Washington were beyond the solicitation of orders allowed by Public Law 86-272 and plaintiff is entitled to apportion its income between Oregon and Washington.