BRIGGS & STRATTON CORPORATION *v.*
COMMISSION

Orval N. Thompson, Albany, represented plaintiff.

Theodore W. de Looze, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered February 2, 1968.

EDWARD H. HOWELL, Judge.

Plaintiff filed this suit to set aside the tax commission's order denying plaintiff's claim for a refund of corporate income taxes for 1963 and 1964.

Plaintiff, a Delaware corporation, with its principal office in Milwaukee, Wisconsin, is not licensed to do business in Oregon. Plaintiff's main business is the manufacturing of gasoline engines. The orders are accepted in Wisconsin and the merchandise shipped to Oregon from the manufacturing plant in Milwaukee.

The first question is whether the net income derived by plaintiff from the sale of its products in Oregon is exempt from Oregon corporate income taxes under the provisions of 15 USCA § 381 (Public Law 86-272) which states:

"§ 381. Imposition of net income tax.

"(a) Minimum standards.

"No State, or political subdivision thereof, shall have power to impose, for any taxable year ending after September 14, 1959, a net income tax on the income derived within such State by any person from interstate commerce if the only business

activities within such State by or on behalf of such person during such taxable year are either, or both, of the following:

"(1) the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State; and

"* * * * *

"(c) * * * For purposes of subsection (a) of this section, a person shall not be considered to have engaged in business activities within a State during any taxable year merely by reason of sales in such State, or the solicitation of orders for sales in such State, of tangible personal property on behalf of such person by one or more independent contractors, or by reason of the maintenance, of an office in such State by one or more independent contractors whose activities on behalf of such person in such State consist solely of making sales, or soliciting orders for sales, of tangible personal property.

"(d) * * *

"For purposes of this section—

"(1) the term 'independent contractor' means a commission agent, broker or other independent contractor who is engaged in selling, or soliciting orders for the sale of, tangible personal property for more than one principal and who holds himself out as such in the regular course of his business activities; and

"(2) the term 'representative' does not include an independent contractor."

There are no tests to be applied and each case must be decided on its own facts.

In addition to manufacturing 4-cycle gasoline engines the plaintiff also makes replacement parts for

such engines and locks and keys for the automotive industry.

Plaintiff has no office, owns no property in Oregon and has no employees who are residents of this state. Plaintiff sells its product to ten customers in Oregon. Nine of these are original equipment manufacturers who purchase plaintiff's engines for use as motive power in their manufactured products. The other customer is Tracey and Company of Portland, a central warehouse distributor, who acts as an independent contractor in handling and distributing plaintiff's products in Oregon. Tracey purchases merchandise from plaintiff, resells to service distributors who in turn sell to service dealers who in turn sell to the user or retail stores. Tracey, like the service distributors and dealers, also handles products for other companies. Plaintiff has no financial interest in Tracey, the service distributors or dealers. Any credit losses are absorbed by the party making the sale. Tracey sells plaintiff's advertising to service distributors and dealers, conducts training schools, checks on customer complaints and appoints authorized service distributors.

Orders originating with Tracey or the original equipment manufacturers are sent to plaintiff's office in Milwaukee, accepted there on approved credit and the product shipped to Tracey or the equipment manufacturer in Oregon.

Plaintiff's Oregon sales amount to about $50,000 per year to the original equipment manufacturers and $120,000 per year to Tracey.

Plaintiff's direct representation in Oregon is by a salaried sales and service supervisor who lives in Washington and spends approximately one week of every eight in Oregon. He does not make collections or repossessions, approve credit, accept payments or

make any deliveries of merchandise. The supervisor does no newspaper advertising in Oregon but does provide up-to-date sales and service manuals.

One of the supervisor's main functions is to contact the nine original equipment manufacturers who are plaintiff's customers, give them engineering advice and encourage them to buy Briggs & Stratton engines. He also attempts to rectify any complaints concerning the use of plaintiff's engines.

One of the primary duties of the supervisor is to maintain a close liaison with Tracey "to see what problems they may have" and that their inventory is adequate. He also makes inspections to see that Tracey's tools and shop are adequate to make the necessary repairs, instructs them on the proper service techniques, and sees that the warranty policies and complaints are properly handled. He, with Tracey, conducts three or four service schools in Oregon each year for Tracey personnel and for the service distributors and dealers and sees that they are attended by the proper persons. The supervisor is one of the lecturers at the school and shows the various mechanics how to repair and service plaintiff's products. In addition, two members of plaintiff's organization came out from Milwaukee to assist in conducting the service schools in Oregon.

The supervisor is also responsible for seeing that Tracey's service data is kept up-to-date. He follows up on customer complaints and makes regular reports to plaintiff regarding conditions in Oregon and at Tracey. He also gives approval to the appointment by Tracey of service distributors and service dealers.

The interpretation of 15 USCA § 381 to determine the extent of activities permissible under "solicitation" of orders was before this court and the Oregon Su-

preme Court in *Herff Jones Co. v. Tax Commission,* 247 Or 404, 430 P2d 998 (1967), affirming 2 OTR 207 (1965); *Cal-Roof Wholesale v. Tax Com.,* 242 Or 435, 410 P2d 233 (1966), affirming 2 OTR 91 (1965); and *Smith Kline & French v. Tax Com.,* 241 Or 50, 403 P2d 375 (1965), reversing 1 OTR 532 (1964). The same interpretation was also before this court in *Iron Fireman v. Commission,* 3 OTR 33 (1967), affirmed, 251 Or 227, 445 P2d 126 (1968), and *Atlas Foundry v. Commission,* 2 OTR 200 (1965).

■ In *Smith Kline & French* and *Atlas Foundry* it was decided that the taxpayers' activities did not exceed the solicitation of orders. In *Smith Kline & French* the Oregon Supreme Court adopted a portion of the decision of the Tax Court which found that Congress, in enacting P.L. 86-272 (15 USCA § 381), " 'intended to exempt not only the specifically described phase of interstate sales efforts but also all lesser, included phases.' " 241 Or at p 55.

■ In *Cal-Roof, Iron Fireman* and *Herff Jones* it was found that the activities went beyond the solicitation permitted by 15 USCA § 381. The Oregon Supreme Court in *Herff Jones,* which is the latest decision interpreting 15 USCA § 381, commented that the *Smith Kline & French* decision might be considered to have placed a broad interpretation on the meaning of "solicitation" of orders. Citing *Cal-Roof, supra,* the Court specifically rejected a broad interpretation of solicitation and emphasized that the *only* permissible business activity was solicitation of orders. Consequently, the decision of the Tax Court in *Atlas,* relied upon by plaintiff, must be considered in light of Justice PERRY's opinion in *Herff Jones.*

■ It is not necessary to decide whether plaintiff's activities through Tracey as an independent contractor

serving more than one principal are in excess of sales or the solicitation of orders for sales under 15 USCA § 381 (a)(1)(c), *supra,* because plaintiff's activities through its sales and service supervisor in Oregon are clearly in excess of solicitation of orders.

Plaintiff's sales and service supervisor does more than solicit orders in Oregon when he gives technical engineering advice to customers, approves the appointment of service distributors, conducts training schools and lectures on the proper service techniques, and inspects the adequacy of the inventory, the tools and the shop at Tracey.

Plaintiff's activities in Oregon exceed those allowed by 15 USCA § 381 and it is not exempt from taxation under the statute.

Next plaintiff contends that if its activities in Oregon exceed those allowed by 15 USCA § 381, there is still insufficient nexus to enable the defendant commission to subject plaintiff to Oregon corporation income tax.[1]

■■ 15 USCA § 381 prevents a state from levying a *net income* tax on income from interstate commerce if the only activity in the host state is the solicitation of orders. The tax proscribed by the statute is a net income tax and the statute does not refer to sales, use

----

[1] On this subject, Beaman, in *Paying Taxes to Other States,* § 6.19, makes the following comment:

"* * * the Committee report on Public Law 86-272 evidences a view that the courts might find that activities outside the literal scope of Public Law 86-272 might be insufficient as a minimum *nexus* for tax purposes. The report states:

"Whether business activities other than those described in the bill constitute a sufficient basis for the imposition by a State or political subdivision thereof of a net income tax on income derived from interstate commerce is left for future determination by the Congress, or in the absence of congressional action, by the courts."

or gross income taxes.[2] However, the two cases before the United States Supreme Court, *Northwestern States Portland Cement Co. v. Minnesota,* and *Williams v. Stockham Valves & Fittings, Inc.,* 358 US 450, 79 S Ct 357, 3 L ed2d 421, 67 ALR2d 1292 (1959), the decisions in which resulted eventually in the enactment of Public Law 86-272 (15 USCA § 381) by Congress, both involved net income taxes. In finding sufficient nexus to sustain the tax the United States Supreme Court referred to the fact that in both instances the taxpayer maintained a sales office in the host state. As previously mentioned, the plaintiff here did not maintain an office in Oregon. In *Herff Jones, supra,* the taxpayer did not have an office in Oregon and in *Amer. Refrig. Transit Co. v. Tax Com.,* 238 Or 340, 395 P2d 127 (1964), *reversing* 1 OTR 429, the Oregon Supreme Court found nexus to be established without the existence of an office in Oregon.

■ The Supreme Court in *General Motors Corp. v. Washington,* 377 US 436, 84 S Ct 1564, 12 Led2d 430 (1964), found the lack of formal offices in the host state by the taxpayer to be of little significance. Also in *International Shoe Co. v. Fontenot,* 236 La 279, 107 So2d 640, *cert. denied* 359 US 984 (1959), and *Brown-Forman Distillers Corp. v. Collector of Revenue,* 234 La 651, 101 So2d 70, *cert. denied* 359 US 28 (1959), the taxpayers did not maintain a sales office or warehouse in the host state, yet were found subject to Louisiana state income taxes. Although the *General Motors* case involved a privilege tax based on gross income and *Northwestern States Portland Cement* and

---

[2] Concerning the extent of the importance of the distinction between the different types of taxes, see Beaman, *Paying Taxes to Other States, supra,* § 2.22, *et seq,* and § 8.2, and Beaman, *How to Apply the Nexus Rules in Making Locational Decisions for Business,* 24 Journal of Taxation 122.

*Stockham Valves* involved net income taxes, all three cases used the definition of nexus as first used by the Supreme Court in 1940 in *Wisconsin v. J. C. Penney Co.*, 311 US 435, 61 S Ct 246, 85 L ed 267, 130 ALR 1229, as "the single but controlling question is whether the state has given anything for which it can ask return."

■ Regardless of the importance to be given to the type of nexus in different classes of taxation the Oregon Supreme Court has decided what factors are necessary for Oregon to constitutionally levy corporate income taxes on a foreign corporation on income derived from sources within this state.

In *Amer. Refrig. Transit Co. v. Tax Com., supra,* the Court cited *Wisconsin v. J. C. Penney Co., supra,* and stated:

"The nexus exists whenever the corporation takes advantage of the economic milieu within the state to realize a profit. The state is entitled to tax if the benefits it provides are a substantial economic factor in the production of the taxpayer's income. \* \* \*

"\* \* \* To establish nexus it is necessary to show that the taxpayer has, in the conduct of his business, taken advantage of the economy of the taxing state to produce the income which is subjected to tax. \* \* \* Nexus may be found even where neither property nor personnel of the taxpayer is employed within the taxing state if it can be said that the state substantially contributes to the production of the taxpayer's income. \* \* \*" 238 Or at 346.

Unquestionably under the *Amer. Refrig. Transit Co.* decision Oregon has sufficient nexus with the plaintiff to sustain the tax. The State of Oregon is a substantial economic factor in the production of plaintiff's

income and plaintiff has taken advantage of such economy to produce the income which the defendant is seeking to tax. Plaintiff has been selling to Tracey and Company since 1938 and its Oregon sales, both to Tracey and the original equipment manufacturers, amounts to $170,000 annually.

Plaintiff contends that the decision in *Amer. Refrig. Transit Co.* has in effect been overruled by a recent decison of the United States Supreme Court in *National Bellas Hess, Inc. v. Department of Revenue*, 386 US 753, 87 S Ct 1389, 18 L ed2d 505 (1967). *Bellas Hess* cannot be considered as authority in the instant case. It involved a use tax imposed by Illinois on a mail order house in Missouri. The company had no outlets, offices, property or sales representatives in Illinois and did no advertising there. Its only connection with Illinois was through the mail when catalogues were mailed to Illinois customers twice each year. Orders were mailed by the customer to Missouri and the merchandise shipped from there. The Court held that insufficient nexus existed for Illinois constitutionally to collect the use tax.

Plaintiff here conducts many more activities in Oregon than *Bellas Hess* did in Illinois. It has a sales and service supervisor who spends substantial time in Oregon giving engineering advice, soliciting sales, conducting service and training schools, rectifying customer complaints and making regular reports concerning market conditions and problems in Oregon. These activities can hardly be compared to mailing two catalogues per year to prospective customers plus receiving and filling orders as occurred in *Bellas Hess*.

The plaintiff is not exempt from corporate income taxes under 15 USCA § 381 as its activities in Oregon constitute more than the solicitation of orders.

Moreover, such activities also constitute sufficient nexus for Oregon to levy the corporate income tax without an undue burden on interstate commerce or a violation of due process.

The order of the commission is affirmed.