# IN THE OREGON TAX COURT

## PHILIP MORRIS, INC.
*v.*
## DEPARTMENT OF REVENUE
(TC 2799)

Christopher Vice, O'Connell, Goyak & DiLorenzo, Portland, and James W. Shea, Hunton and Williams, New York City, represented plaintiff.

James C. Wallace, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Remanded to Department of Revenue March 1, 1990.

**CARL N. BYERS, Judge.**

Plaintiff is a Virginia corporation which manufactures and sells tobacco products throughout the United States. Defendant determined that plaintiff owed Multnomah County Business Income Taxes (MCBIT) for the years 1976 through 1979. (Opinion and Order No. 85-1127.) Plaintiff contends that it is not liable for such taxes and appeals from defendant's assessment.

Plaintiff ships its products to its warehouse in Clackamas County.[1] Plaintiff's customers, wholesale distributors, pick up the products and tobacco tax stamps from the warehouse and take them to their own warehouses. They then affix the tax stamps and prepare the products for sale. These distributors typically carry several brands of cigarettes, candy, gum, etc. The distributors' sales representatives solicit orders and deal with complaints from retail stores. The activities of the distributors' sales representatives are not part of plaintiff's activities and are not in question.

During the years in question, plaintiff's activities in Multnomah County were solely those of its sales representative, Mike Weber. Mr. Weber's testimony described the duties and business activities of a sales representative (sales rep). Plaintiff's sales reps are salaried employees. They receive no bonuses or commissions as a result of their activities. Plaintiff furnishes each sales rep a vehicle and a modest operating fund. The sales reps do not solicit orders. Although they encourage the retailers to order plaintiff's products, all orders are placed with the distributors, not with plaintiff. The sales rep's primary function is to promote plaintiff's products and retailer goodwill. They work with the retailers, suggesting ways to increase sales, rearrange displays or demonstrate how to display the product effectively. They set up promotional displays offering the consumers additional benefits for buying plaintiff's products, such as belt buckles or sweat outfits. The

---

[1] Plaintiff utilizes a public warehouse operated by Rudie Wilhelm Warehouse Company. The goods are sent to the warehouse "on consignment."

sales reps also mark the stock that is old and stale. Stock that is old and stale can be returned by the retailer through the distributor to plaintiff.

Occasionally, if a retailer's stock is old or crushed, plaintiff's sales rep will replace it with new stock. The sales rep then returns the old or crushed stock to the distributor and receives either credit or new stock. The sales rep can also use the stock in his vehicle to provide stock to a retailer who is temporarily out. Plaintiff's sales reps sometimes promote the product with the consumers. Sales reps may offer free samples to consumers. They are also authorized to make limited incentive offers. For example, they can offer a consumer two free packs of cigarettes if the consumer will purchase one carton.

Plaintiff's sales reps do not service plaintiff's customers, the wholesale distributors. They do not take or approve orders from the distributors, collect amounts owing, make adjustments, investigate credit, approve claims, pick up returned merchandise or make displays for distributors. Plaintiff's sales reps, in essence, are goodwill or "missionary" employees only. The focus of their work is not on the relationship between plaintiff and its customers, the distributors. Rather, it is on the relationships between the distributor and the retailer and the retailer and the consumer.

Plaintiff first claims protection from liability for MCBIT taxes by virtue of Public Law 86-272. The relevant portions of that federal statute provide:

"(a) No State, or political subdivision thereof, shall have power to impose, * * * a net income tax on the income derived within such State by any person from interstate commerce *if the only business activities within such State* by or on behalf of such person during such taxable year are either, or both, of the following:

"(1) the solicitation of orders * * * which orders are sent outside the State for approval or rejection, * * *; and

"(2) the solicitation of orders * * * *in the name of or for the benefit of a prospective customer* * * *." (Emphasis added.) 15 USC § 381.

The same claim was made and rejected in *Basic American Foods v. Dept. of Rev.,* 10 OTR 526 (1987). As held in that case, Public Law 86-272 applies only to the state. Multnomah

County is not a state. Public Law 86-272 bars taxation by a political subdivision of a state only if the taxpayer is not taxable within the state. If the taxpayer's activities within the state exceed the protected "solicitation," it becomes subject to taxation by a local subdivision of that state. Since plaintiff is taxable in Oregon, Public Law 86-272 does not protect plaintiff from taxation by Multnomah County. In such case, the only limitations are those of constitutional due process and the commerce clause. These provisions require the taxpayer to have sufficient contact or nexus with the political subdivision. *Hess v. Illinois,* 386 US 753, 87 S Ct 1389, 18 L Ed 2d 505 (1967).

■     Even if Public Law 86-272 applied, plaintiff's activities exceed those protected by that law. Plaintiff's evidence established that its sales rep does not service plaintiff's customer, the distributor. Plaintiff appears to believe this insulates it from taxation. It does not. The issue is not whether the sales reps are a link in the sales chain, but whether their activities are something more than solicitation. The court has concluded that, taken as a whole, the activities of the sales reps exceed those that fall within the term "solicitation." Giving out free samples may be part of solicitation. Dusting off and rearranging the retailers stock, replacing old or damaged stock, delivering small amounts of stock when the retailer may be low and marking old stock for return to the distributor is not part of solicitation. These activities are more than "solicitation" of orders.

Plaintiff maintains that the activities of its sales reps are all "pre-sale" activities. The court disagrees. If a retailer purchases 90 cartons of cigarettes and then plaintiff's sales rep shows the retailer how to best display them for sale, this is an after-sale activity. Likewise, checking the inventory of a retailer and removing stale or crushed cigarettes and exchanging them for new is an after-sale activity.

From the court's point of view, it is irrelevant that the sales rep does not serve plaintiff's direct customer, the distributor. The basic question concerns the business activities of the taxpayer, not who its customers are. Plaintiff may choose to assign its sales reps to work with the retailers and consumers because that is the most effective way to promote its product. However, those activities are more than just solicitation.

They are similar to those of a machinery company working with its customers to achieve customer satisfaction. *Briggs & Stratton Corp. v. Commission,* 3 OTR 174 (1968).

At the conclusion of trial, plaintiff moved to amend its complaint with regard to penalties and interest assessed. The court granted the motion.

Plaintiff claims that defendant's four-year delay in responding to its request for a hearing resulted in unnecessary potential liability for penalties and interest. Defendant assessed the tax on July 6, 1981. In a letter received by defendant on July 30, 1981, plaintiff asserted that the tax was in error. Plaintiff's letter is not in the record, but defendant's auditor testified that the letter requested a conference if defendant did not agree with plaintiff's position. For reasons unknown, defendant did not respond to plaintiff's letter until March 18, 1985.

■ Plaintiff seeks to be excused from the penalties and interest solely on the basis of defendant's delay in responding. That is not enough. No statute authorizes this court to waive penalties or interest. Only some violation of plaintiff's fundamental rights or other egregious conduct, such as misrepresentation or fraud, will justify the court in striking down statutory mandated penalties and interest. A four-year silence by defendant does not meet that test. Plaintiff has not pleaded or proved the elements of estoppel. In these circumstances, the court must uphold the penalties and interest.

■ Plaintiff's last claim is that none of its income is apportionable to Multnomah County. The ordinance imposes a tax on income derived from business activity in Multnomah County. For businesses which have income derived from activities "both within and without" the county, the income is apportioned for taxation based on sales. The formula uses a fraction, the numerator of which is sales in the county and the denominator of which is sales everywhere. If a business has no sales within the county, there is no income to be apportioned for taxation. The ordinance describes sales within the county as follows:

> "Sales of tangible personal property are in the county if the property is delivered or shipped to a purchaser within the county regardless of the f.o.b. point or other conditions of the sale." MCC 5.70.050

Plaintiff contends that none of its sales are "delivered or shipped to a purchaser within the county." Mr. Weber testified that plaintiff's customers, the wholesale distributors, go to a Clackamas County warehouse to pick up the product they purchase from plaintiff. Plaintiff argues that, consequently, the product is not "delivered" in Multnomah County but is delivered in Clackamas County. Further, plaintiff does not ship its product to Multnomah County but ships it to Clackamas County. In response, defendant maintains that MCBIT uses a destination formula and plaintiff's sales are in Multnomah County.

Not all destination formulas are the same. A Special Subcommittee On Taxation Of Interstate Commerce of the Committee of the Judiciary of the House of Representatives made the seminal study of this subject. Its report points out that some formulas use the "ultimate receipt" test and others use a "delivery" test. The committee gives the following example:

"To gauge the practical effect of this difference, assume that the buyer picks up goods at the seller's warehouse in State A. Buyer then carries the goods to his retail outlet in State B. Assume further that the seller is required to file income tax returns in both States A and B and that both are 'destination' States. In order to prepare his returns, the seller would have to determine whether each of these States assigns the sale on the basis of 'ultimate receipt' or of delivery. If both use the same standard the sale will be assigned to only one State. If State A uses 'ultimate receipt' and State B uses the place of delivery the sale will not be assigned to either; reverse the situation, and it will be assigned to both." HR Rep. No. 1480, 88th Cong., 2nd Sess., Vol 1, at 184 (1964).

The formula used by MCBIT is a "delivery" formula. Under this test, the goods are delivered where the customers take possession of the product. This is consistent with defendant's own evidence. Mr. Ashton testified:

"[W]e have manufacturers in Multnomah County who pay no Multnomah County tax because their * * * sales are outside of Multnomah County. They have activity in Multnomah County which makes them subject, but their sales, their shipments, are * * * to customers outside of Multnomah County and only if their customers came in and picked up the product in Multnomah County and delivery was made there would we have any tax liability there."

In interpreting the ordinance, it is important to note that it adopts, by reference, the state statutes and the accompanying administrative rules. OAR 150-314.665(2)-(A) is, therefore, applicable in determining the meaning of the ordinance. The ordinance specifies that the term "county" shall be substituted in place of "state" or "Oregon."

Another way to view the problem is to consider the facts as if they occurred on a state level. For example, an Oregon business sends its truck to Idaho, picks up a product and brings it back into Oregon. Did the sale of the tangible personal property take place in Oregon? The administrative rule appears to identify the taxpayer as the one who does the delivering or shipping. For example, the rule states:

> "The term 'purchaser within this state' shall include the ultimate recipient of the property if the taxpayer in this state * * * delivers to or has the property shipped to the ultimate recipient..." OAR 150-314.665(2)-(A).

■ The issue of where plaintiff's sales occur was not raised before the department. It arose in this court almost as an afterthought. The evidence pertaining to this issue is inconclusive and peripheral. The parties have declined the court's invitation to reopen the trial for a full consideration of the relevant facts and law. The court finds that resolution of this issue is necessary to a full determination of this case. In accordance with ORS 305.425(3), it is necessary to remand this matter back to the department for further determination. Judgment of remand will be entered.

Costs to neither party.