Argued June 1, reversed September 10, 1964

# AMERICAN REFRIGERATOR TRANSIT COMPANY *v.* STATE TAX COMMISSION

395 P. 2d 127

*Alfred B. Thomas,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Robert Y. Thornton, Attorney General, and Theodore W. de Looze, Assistant Attorney General, Salem.

*Roy F. Shields,* Portland, argued the cause for respondent. With him on the brief were Maguire, Shields, Morrison, Bailey & Kester, Portland.

Before McAllister, Chief Justice, and Rossman, Perry, Sloan, O'Connell, Goodwin and Lusk, Justices.

O'CONNELL, J.

This is an appeal from a decree of the Oregon Tax Court setting aside defendant's order requiring plaintiff to pay the Oregon corporate income tax for the calendar years 1955 through 1960. The following statement of facts is adopted from the opinion of the Oregon Tax Court.

Plaintiff (hereafter referred to as "ART") owns refrigerator cars which it leases to operating railroads. "It is not a public carrier, it issues no bills

of lading, it has no dealings with shippers, and it publishes no tariffs of rates for shippers. ÁRT's sole activity in the transportation field is to rent railroad refrigerator cars to operating railroads for their use in performing their own transportation service for their own shippers under their own tariffs and shipping documents.

"ART has no rental agreement with railroads operating in Oregon. However, under the interchange procedures applicable to railroads today, some of its cars are interchanged onto railroads operating in Oregon and thereby do travel to, into, and through Oregon. Under its rental contracts and the interchange rules, a railroad using an ART car pays a fixed rate per mile of its use. Monthly, each using railroad reports to ART the mileage traveled by each car used by it. These reports and the rental payments are sent directly to St. Louis. Light or running repairs on ART cars are made by the using railroad, and some such repairs are made in Oregon by railroads serving this state which have the use of cars under interchange arrangements with ART's lessees. All other repairs are made outside of Oregon.

"ART cars are delivered to the contracting railroads at certain junction points, none of which is in Oregon, and thereafter, until the cars are returned to ART at a junction point, ART has no control over there routing, movement, interchange or other use. The cars are used as are any other cars of the using railroad.

"ART files with the commission all required property tax reports and pays Oregon property tax upon its cars in Oregon as a centrally assessed utility pursuant to ORS 308.505 et seq."

The tax was imposed under ORS 318.020, which provides as follows:

"(1) There hereby is imposed upon every corporation for each taxable year a tax at the rate of eight percent upon its net income derived from sources within this state after August 3, 1955, other than income for which the corporation is subject to the tax imposed by the Corporation Excise Tax Law of 1929 (ORS chapter 317) according to or measured by its net income. For tax years beginning on and after January 1, 1957, the tax rate shall be six percent.

"(2) Income from sources within this state includes income from tangible or intangible property located or having a situs in this state and income from any activities carried on in this state, regardless of whether carried on in intrastate, interstate or foreign commerce."

Defendant assessed the tax upon the ground that the income received by plaintiff for the mileage its cars travel in Oregon is "income from tangible * * * property located or having a situs in this state" and is, therefore, "income derived from sources within this state" under ORS 318.020.

Plaintiff contends that ORS 318.020 does not apply because it has no property "located or having a situs" in Oregon, and does not carry on any activity in this state. Plaintiff further contends that if ORS 318.020 was intended to apply to its property the statute would violate the due process clause of the Fourteenth Amendment. In short, plaintiff argues that there is no nexus between the tax and the transactions within Oregon for which the tax is an exaction. The Oregon Tax Court concluded that the required nexus was lacking. The court's reasoning was as follows:

"A review of the cases brings forth, from those

cases in which sufficient nexus has been found, the presence of one salient and determinative feature which is not found in this case. In each of those cases finding sufficient nexus, there was, within the borders of the taxing state, a person or persons connected with, and engaged in business activities and transactions on behalf of, the proposed taxpayer. In the instant case there is no such person or activity in Oregon. Without such person acting on behalf of the taxpayer, doing within this state something in furtherance of the business of the taxpayer, there can be no 'transaction' or 'activity' of the plaintiff within this state for which our corporate income tax can be an exaction. Thus the required nexus between tax and transaction fails for want of one of the elements which due process requires.

"In this case not only was there no activity of any person on behalf of the taxpayer, but such of its property as was in Oregon was here under the control of the interchange bailees of its lessees. The mere presence of ART's property here on January 1 subjects it to property tax, which it pays. However, liability for property tax does not create, *ipso facto,* liability for income tax.

"The benefits conferred by the state in return for the property tax are not sufficient to support income tax liability.

" '* * * The tax on each [on property and on income] is predicated upon different governmental benefits; the protection offered to the property in one state does not extend to the receipt and enjoyment of income from it in another.' New York ex rel Cohn v. Graves, 300 US 308, 314, 57 S Ct 466, 81 L ed 666, 671, 108 ALR 721 724 (1937).

Instead, the benefits assumed to accrue to the taxpayer in return for exaction of the *in rem* property

tax, which arises as it does from the mere presence of property within the state, would appear to preclude mere presence of property within the state, without more, from being sufficient nexus for an *in personam* income tax predicated upon benefits conferred by the taxing state other than those for which the property tax is an exaction.

"The benefit conferred by the state with respect to income taxation is not the same protection of the income-producing property for which the property tax is exacted, but rather is the protection of the receipt and enjoyment of income or the maintenance of conditions under which the acquisition of that income can be accomplished or materially furthered. Thus, the sending of solicitors, sales engineers, and other personnel into a state to solicit or otherwise further the acquisition of income creates a sufficient nexus to render the income which they create or further by their activity taxable under proper allocation procedures, because the state protects these agents of the taxpayer and creates and maintains conditions under which an income-producing relationship can be established or fostered. But after the income-producing relationship has been established by the consummation of a lease and the transitory property which is the subject of the transaction has been delivered to the lessee, all outside of the taxing state, the mere receipt of income from the lease of that transitory personal property during the time that it is brought into the taxing state by the bailee of its lessee, in the course of the business of this bailee, under an arrangement for the interchange of railroad cars with the lessee, does not create that nexus upon which state income taxation of the nonresident lessor can be constitutionally based. There is nothing that this state does or pro-

vides which has a connection with that income as such and for which it can exact its tax, especially having already exacted its property tax for the protection of the plaintiff's income-producing property."

■ We cannot accept the lower court's concept of nexus necessary to sustain the constitutionality of the tax imposed upon plaintiff. We do not regard it as essential to the existence of a nexus that the taxpayer, through its agents, *directly* engage in some form of physical activity within the state in furtherance of a business purpose. The connection between the taxing state and the out-of-state taxpayer necessary to establish nexus is essentially an economic rather than a physical relationship. The theory is that a state is free to exact a reasonable tribute from those using its economic resources.

> "* * * A state is free to pursue its own fiscal policies, unembarrassed by the Constitution, if by the practical operation of a tax the state has exerted its power in relation to the opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly, civilized society." *Wisconsin v. J. C. Penney Co.*, 311 US 435, 444, 61 S Ct 246, 85 L Ed 267 (1940).

The nexus exists whenever the corporation takes advantage of the economic milieu within the state to realize a profit. The state is entitled to tax if the benefits it provides are a substantial economic factor in the production of the taxpayer's income. These benefits are found in the maintenance of conditions essential to the production or marketing of goods. They may be realized simply in the protection of the taxpayer's property used in the production of income.

■ We do not mean to say that nexus exists in every case where Oregon's economy can be said to have contributed to the production of income. Income, no matter where received, ordinarily is the product of economic influences operating from many sources, some far back in the chain of economic cause and effect. To establish nexus it is necessary to show that the taxpayer has, in the conduct of his business, taken advantage of the economy of the taxing state to produce the income which is subjected to tax. This is readily seen where, as in the instant case, the taxpayer's property itself is employed in the taxing state to produce income. Nexus may be found even where neither property nor personnel of the taxpayer is employed within the taxing state if it can be said that the state substantially contributes to the production of the taxpayer's income. Thus, apart from federal legislation,[1] it would seem to us that income derived from the sale of goods in Oregon by a nonresident corporation relying entirely upon radio or television advertising would be taxable in this state.[2]

---

[1] Such as Pub L 86-272, 73 Stat 555 (1959) which prohibits the imposition of an income tax upon sellers of tangible personal property whose only business activity within the taxing state consists of the solicitation of orders.

[2] "* * * Should not the exploitation of a state's markets for the capture of profits be enough for that state to demand something in return, thus satisfying the requisites of the due process clause? Several hundred travelling salesmen, no matter how avidly they hawk their wares, are not nearly as effective a 'nexus' for an exploitation or invasion of a consumer market as a Dinah Shore or a Pat Boone as they croon their sponsor's products into the hands of thousands of purchasers on interstate television and radio. Is the state of market to be denied a tax from either the out-of-state seller or the broadcasting company because the contacts of such out-of-state sellers and broadcasters are ethereal only? Or, should a well known milk company be permitted to milk the consumer market with the sonorous singing

■ Refrigerator cars are used to ship perishables from Oregon to markets in other states and to bring perishables to the markets in this state. If plaintiff itself carried on the business of moving perishables in and out of Oregon, it would be clear that the profit earned by it would be subject to the corporate income tax. Where plaintiff does not directly engage in the business of transporting the goods, but reaps its profit from the use of its equipment by others, although the rental for its equipment cannot be deemed "income from [an] activity carried on in this state" (ORS 318.020), nevertheless the source of its profit in the economic setting in Oregon is clear and it is equally clear that the income is derived from plaintiff's property which is used in this state and to that extent is "located" here. The fact that plaintiff's cars are operated by plaintiff's lessees (or their bailees) rather than by plaintiff's own agents is not significant. Whether the income derived from property located in a state comes to the owner indirectly in the form of rent under a lease or directly in the form of income from its own use of its property, the source of the income is the same, and it is the taxing state that has provided the source by providing and maintaining the economic setting out of which the owner reaps its profit. This is the basis for the decision in *Warner Bros. Pictures v. District of Columbia,* 168 F2d 157 (D.C. Cir 1948) where it was held that a nonresident lessor of films was taxable on the rentals received from its lessee within the District of Columbia which assessed the

of ballads by hillfolk and western singers without paying its tithe to the state of market on the ground that the interstate radio and television milking process is too ethereal?" Hartman, State Taxation of Corporate Income from a Multistate Business, 13 Vanderbilt L Rev 21, 43 (1959).

tax. The court said "the sums received by Warner [the nonresident owner] came from District sources because the location of personal property which is the subject of hire betrays the source of the owner's income derived from the hire." (168 F2d at 159).

Plaintiff has regularly paid a property tax to Oregon on the assumption that its cars are located or have a situs in this state for property tax purposes. Plaintiff argues, however, that situs for property tax purposes does not establish situs for income tax purposes. The lower court took the same view upon the ground that "the benefit conferred by the state with respect to income taxation is not the same protection of the income-producing property for which the property tax is exacted, but rather is the protection of the receipt and enjoyment of income or the maintenance of conditions under which the acquisition of that income can be accomplished or materially furthered." We do not believe that the lower court's distinction is sound. Both the income tax and the property tax may be exacted from the same taxpayer for the same form of a "protection." For example, the property tax may be justified upon the ground that property receives police protection from local government and the income tax may be justified on the ground that the property receives police protection from the state government.

Adopting the language of the lower court, it could be said that the state's police protection is in part "the maintenance of conditions under which the acquisition of that income can be accomplished or materially furthered," assuming, of course, it can be shown that the owner derives income from the protected property.

We hold that the plaintiff's cars had a "situs" in

Oregon within the meaning of ORS 318.020 and that since the cars were used in the exploitation of the market in Oregon from which plaintiff derived income through its rental of the cars, there was a sufficient nexus to satisfy the due process requirement of the Fourteenth Amendment.

There is support for our position in at least two states.[9] A contrary view is indicated in several cases.[4] The question before us has not yet been passed upon by the United States Supreme Court. It is now firmly established that a state may tax the net income of a corporation engaged exclusively in interstate commerce.[5] We would expect the United States Supreme Court to hold, as we do, that due process nexus is established even though the taxpayer has no offices or agents within the taxing state if it could be shown that Oregon's economy was a substantial economic

---

[9] Commissioner of Revenues v. Pacific Fruit Express Co., 227 Ark 8, 296 SW2d 676 (1957); Oklahoma Tax Com'n. v. American Refrigerator Tr. Co., 349 P2d 746 (Okla 1960). Comment, 11 Vanderbilt L Rev 257 (1957).

[4] Williams v. American Refrigerator Transit Co., 91 Ga App 522, 86 SE2d 336 (1955); Kentucky Tax Com'n. v. American Refrigerator Transit Co., 294 SW2d 554 (Ky 1956).

[5] Northwestern Cement Co. v. Minnesota, 358 US 450, 79 S Ct 357, 3 L Ed2d 421, 67 ALR2d 1292 (1959) (net income from manufacture and sale of goods). Certiorari has been denied in cases where the activity carried on by the taxpayer in the taxing state was of relatively slight significance in the production of income. In Brown Forman Distillers Corp. v. Collector of Revenue, 234 La 651, 101 So2d 70 (1958) the taxpayer's only activity in the taxing state was the maintenance of representatives to receive orders and the presence of certain promotional representatives. In International Shoe Co. v. Fontenot, 236 La 279, 107 So2d 640 (1959) the taxpayer's activity consisted of the regular and systematic solicitation of orders for its product by fifteen salesmen. In both cases, the Louisiana Supreme Court held that there was no undue burden on interstate commerce and no violation of the Fourteenth Amendment.

factor in the production of the taxpayer's income subject to tax.©

The decree of the lower court is reversed.

---

© "* * * The * * * controlling question is whether the state has given anything for which it can ask return." Wisconsin v. J. C. Penney Co., 311 US 435, 444, 61 S Ct 246, 85 L Ed 267 (1949).

"* * * It is probable, however, that the maintenance of an office is not necessary in order to provide due process and that an apportioned tax on the net income of a corporation which sends only drummers into the state will be held valid, applying the principles of International Shoe Co. v. Washington, [326 US 310, 66 S Ct 154, 90 L Ed 95, 161 ALR 1057 (1945)]." Note, 47 Calif L Rev 388 at 392 (1959).