## CAL-ROOF WHOLESALE, INC. *v.* STATE TAX COMMISSION

Thomas S. Moore, Portland, argued the cause for plaintiff. Thomas S. Moore, Maguire, Shields, Morrison, Bailey and Kester, Portland, filed briefs for plaintiff.

Gerald F. Bartz, Assistant Attorney General, Salem, argued the cause for defendant. Gerald F. Bartz, Alfred B. Thomas, Assistant Attorneys General and Robert Y. Thornton, Attorney General, Salem, filed a brief for defendant.

Decision for plaintiff rendered November 16, 1964.

PETER M. GUNNAR, Judge.

This is a suit to set aside defendant's Opinion and Order No. 1-64-4, assessing plaintiff additional corporate excise taxes for the years 1959, 1960, and 1961. The parties stipulated all facts in this court.

Plaintiff is an Oregon corporation with its only Oregon office located in Portland. In preparing its

Oregon corporation excise tax returns plaintiff allocated a portion of its total income to business done in the State of Washington and excluded that portion of its income from income taxable by the State of Oregon. On September 30, 1963, the defendant issued its Notice of Tax Deficiency Assessment for the Years 1959, 1960, and 1961. Plaintiff timely appealed to defendant for a revision of the assessed liability. Its appeals were denied in Opinion and Order No. 1-64-4 on the ground that Cal-Roof Wholesale, Inc., had not established a nexus in Washington, and is not, therefore, entitled to apportion its income between Washington and Oregon.

Plaintiff has a Washington resident salesman whose duties include solicitation of orders, collecting delinquent accounts, authorizing credit and picking up merchandise from dissatisfied Washington customers for return to plaintiff. All products sold by plaintiff's salesman are supplied from its Portland warehouse and most of them are delivered in Washington in trucks leased by Cal-Roof in Oregon. Plaintiff's resident salesman operates out of his home and maintains no other office in Washington. He carries a line of samples. Plaintiff is listed in the white and yellow pages of the Vancouver, Washington, telephone directory and pays the Washington business license.

The sole issue is whether Cal-Roof Wholesale, Inc., may allocate a portion of its net income to the State of Washington for Oregon excise tax purposes under ORS 314.280.

ORS 314.280 (1) is as follows:

"(1) If the gross income of a corporation or a non-resident individual is derived from business done both within and without the state the determination of net income shall be based upon the

business done within the state, and the commission shall have power to permit or require either the segregated method of reporting or to the apportionment method of reporting, under rules and regulations adopted by the commission, so as fairly and accurately to reflect the net income of the business done within the state.

"* * * * *"

Whether this statute permits plaintiff to allocate income depends on whether it was doing business in the State of Washington during the tax years in question. Defendant contends that plaintiff was not "doing business" outside the State of Oregon, and relies upon a definition of a tax meaning of the term "doing business" in a Georgia case. ORS 317.010 (8) of the Corporation Excise Tax Law, defines "doing business" as follows:

"(8) 'Doing business' means any transaction or transactions in the course of its activities conducted within the state by a national banking association, or any other corporation; * * *"

Historical research of this definition statute and the allocation statute discloses the applicability of this definition to ORS 314.280.

ORS 314.280 was enacted in Oregon's first Excise Tax Law of 1929, Or L 1929, ch 427, § 7. In 1929 the law read:

"Section 7. Allocation. If the gross income is derived from business done both within and without the state, the determination of the net income shall be based upon the business done within the state and the commission shall adopt such recommendations and regulations as will fairly and accurately reflect the net income of the business done within the state."

First codified in OC 69-1307, this language was

brought forward with minor additions into OCLA 110-1507 and then into ORS 317.180. In Or L 1957 ch 632, § 4, was enacted in lieu of ORS 317.180 and ORS 316.205 (the latter allowing individuals to allocate if business was done within and without the state.) This was codified in ORS 314.280. The definition of "doing business" in ORS 317.010(8) as "* * * any transaction or transactions in the course of business * * *" was brought forward from the Or L 1929, ch 427, § 2 (f). The word "business" was changed to "activities."

■ The test of whether business is done both within and without the state is determined by the definition of "doing business." In one of the early cases interpreting these statutes the question was whether the corporation was doing business within this state and therefore taxable. *Welch Holding Company v. Galloway,* 161 Or 515, 89 P2d 559, (1939). The Supreme Court said:

> "As noted, by the terms of the statutory definition, a transaction or transactions, whether by a domestic or foreign corporation, must be 'in the course of its business.' If no business is done, a transaction cannot be in the course of business. The definition was plainly not incorporated into the statute to aid in distingushing between corporations which are 'doing business' and those which are not 'doing business.' The definition relates to the question of what parts of a business are within and without the state by providing that this question shall be determined by the situs of the transactions of the corporation." 161 Or at 526.

Again, speaking of the test of doing business, the Court interpreted it to mean:

> "The words 'doing business' have been used for years in laws imposing taxes upon corporations for

the privilege of doing business. In the absence of a clearly expressed intention to do so the Oregon legislature will not be held to have meant by its use of this common expression something different from the usual meaning of the words. It seems that in their ordinary sense the words 'doing business' means the engaging in activities in the pursuit of gain. Defendant apparently agrees with this definition. Tested by this definition, the Welch Holding Company was not 'doing business' in 1929 and 1930." 161 Or at 526.

This definition was used in *John I. Haas, Inc. v. State Tax Commission,* 227 Or 170, 184, 361 P2d 820 (1961) to determine whether the foreign corporation involved was doing business in Oregon so as to be amenable to our excise tax law. Again in *Dutton Lbr. Corp. v. State Tax Commission,* 228 Or 525, 534, 365 P2d 867, (1961), the court determined that "doing business" under the excise tax law was defined in ORS 317.010 (8) and that ORS 314.280 authorized the methods to ascertain the amount. Thus "doing business" under Oregon Corporation Excise Tax Law, means a "transaction or transactions in the course of business" engaged in for the pursuit of gain.

Tested by this definition, plaintiff was and is doing business in the State of Washington.

Pursuant to ORS 314.280 the Tax Commission has formulated regulations for apportionment of income. Reg 4.280 (1) (B) is applicable here.

"Sales Factor. (This amendment to the sales factor portion of Reg. 4.280 (1)—(B), filed with the Secretary of State on December 29, 1959, redefining sales for the purposes of apportionment formula, shall apply to tax returns for taxable years beginning on or after January 1, 1960. For prior years the regulation applicable to a particular year shall remain in effect.)

"The sales factor is the percentage that the sales or charges for services within the state for the taxable year bear to the sales or charges for services both within and without the state for the taxable year.

"Sales are in this state if:

"* * * * *

"(b) The property is shipped from an office, store, warehouse, factory or other place of storage in this state and (1) the purchaser is the United States Government or (2) the taxpayer is not taxable in the state of the purchaser.

"Charges for services are in this state to the extent that the services are performed in this state.

"For purposes of this sales factor definition a taxpayer is taxable in another state if the taxpayer would be required to pay a tax based upon or measured by net income in that state if that state adopted the tax laws of this state * * *"

* * * * *

■ In its brief defendant argues that plaintiff is not taxed in Washington and so is liable for 100% taxation in Oregon. But Reg. 4.280 (1)—(B) Sales Factor does not make taxation by the foreign state a prerequisite to allocation. Rather it states clearly that the corporation is considered taxed in the foreign state if it would have been taxed, had that state had the Oregon law. The controlling question is not whether Washington does tax but rather whether Oregon could and would tax under the same facts.

As previously noted, plaintiff's transactions and activities were in the course of its business. These activities and transactions were definitely engaged in for the pursuit of gain and constitute "doing business." The activities detailed above create sufficient nexus between the State of Oregon and a foreign corporation to permit Oregon to include the gross sales in the

State of Oregon for taxation purposes. See: *United States Tobacco Company v. State Tax Commission,* 229 Or 627, 368 P2d 337 (1962), where, on reverse facts, the Court held there was sufficient nexus to tax the foreign corporation. See also, *General Motors Corporation v. Washington,* 377 U. S. 436, 12 L ed 2d 430, 84 S Ct 1564 (1964), in which the Supreme Court of the United States held the corporation taxable even though the manager had no office within the state, operating from his home where he received his telephone calls and carried on the corporation's business. By defendant's own regulation, plaintiff's Washington sales must be excluded from Oregon taxation.

Although this decision does not rely on the recent opinion of the Oregon Supreme Court, *American Refrigerator Transit Co. v. State Tax Commission,* 238 Or 340, 395 P2d 127 (1964), this court notes the concept of sufficient nexus for Oregon taxation purposes there expressed:

> "The nexus exists whenever the corporation takes advantage of the economic milieu within the state to realize a profit. The state is entitled to tax if the benefits it provides are a substantial economic factor in the production of the taxpayer's income. These benefits are found in the maintenance of conditions essential to the production or marketing of goods. They may be realized simply in the production of the taxpayer's property used in the production of income." 238 Or at 346.

Defendant contends that under Public Law 86-272 the State of Washington would be barred from taxing the activities of Cal-Roof in Washington. Public Law 86-272, § 101, applies where the only activity of the salesman is the solicitation of orders, which orders are sent outside the state for approval or rejection and

which orders are filled from without the state. A rereading of the pretrial stipulation of the facts shows numerous other activities on the part of the plaintiff's salesman in the State of Washington that take it out of the purview of P. L. 86-272.

Thus, this court finds that the plaintiffs, having established sufficient nexus in Washington, are entitled to apportion their income between Oregon and Washington.

Plaintiff shall prepare a decree setting aside defendant's assessments of additional corporate excise taxes for the years 1959, 1960, and 1961 and awarding costs to neither party.

### DECISION UPON PETITION FOR REHEARING

Thomas S. Moore, Portland, argued the cause for plaintiff.

Theodore W. de Looze, Assistant Attorney General, Salem, and Gerald F. Bartz, Assistant Attorney General, Salem, argued the cause for defendant.

Decision on the motion for plaintiff rendered February 3, 1965.

Peter M. Gunnar, Judge.

Defendant has moved the court for a rehearing in

this case to obtain the court's determination of the following questions:

1. Did the court find in its earlier decision that the taxpayer was "doing business" in the State of Washington?

2. Did the court mean that "doing business" is something other than "nexus" or is "nexus" sufficient to require apportionment?

3. Did the court find that the taxpayer was doing sufficient business to be taxable in Washington, if Washington had Oregon's excise tax law, chapter 317?

4. Did the court find that the taxpayer had sufficient nexus to be taxable in Washington, if Washington had Oregon's income tax law, chapter 318?

5. If the court considered PL 86-272 to be operative, would the decision have been different, or does the effectiveness of PL 86-272 have any relationship to this case?

6. Does the court find that, if tax jurisdiction is present in a foreign state, it is required to find that Oregon must allocate the income of a domestic corporation?

This court in its earlier decision found that plaintiff was "doing business" as that term is defined in the Oregon Corporation Excise Tax law, ORS 317.010(8). This is an extremely broad definition. It is not the definition applied by the United States Supreme Court in determining the constitutionality of a state corporation excise tax upon a foreign corporation engaged in interstate commerce. *Spector Motor Service, Inc. v. O'Connor,* 340 US 602, 71 S Ct 508, 95 L Ed 573 (1951). The Supreme Court's definition is much more restrictive.

However, the question presented by this case is the interpretation of the Oregon Corporation Excise

Tax law and its application to a domiciliary corporation. ORS 317.010(8) has not been amended or reappealed since the *Spector* decision in 1951. It is still the law in this jurisdiction, unless the constitutional issue presented in *Spector* arises. That constitutional issue does not affect the application of the allocation formula under the Oregon Corporation Excise Tax law with respect to domestic corporations.

The statutory language which permits allocation contained in ORS 314.280(1) allows allocation if the corporation's gross income is "derived from business done within and without the state." Doing business is defined by ORS 317.010(8). Within that definition plaintiff was doing business in the State of Washington.

■ In answer to the second question, this court determines that "doing business" is not coterminous with "nexus", though "doing business" is sufficient to establish "nexus."

By the answers to the first two questions, this court has answered questions 3 and 4.

This court has held PL 86-272 to be unconstitutional. At this writing this court has not been reversed by any higher court. Therefore, for the purposes of this case, PL 86-272 is deemed inapplicable. But in view of ORS 317.010(8), this court questions the applicability of PL 86-272 to this problem, if that statute is constitutional.

The last question presented does not need to be decided in this case. As yet, the United States Supreme Court has not been squarely faced with the question raised. However, this court has some concern as to the constitutionality of a corporation excise tax upon either a domestic or a foreign corporation engaged in interstate commerce. In *Northwestern State's*

*Portland Cement Company v. Minnesota,* 358 US 450, 79 S Ct 357, 3 L ed2d 421, 67 ALR2nd 1292 (1959), the court laid a great deal of stress upon the fact that multiple state taxation was not shown in that case and indicated that such multiple state taxation would be an undue burden. It distinguished *Standard Oil Co. v. Peck,* 342 US 382, 72 S Ct 309, 96 L ed 427, 26 ALR2d 1317 (1952), from *Northwest Airline, Inc. v. Minnesota,* 322 US 292, 64 S Ct 950, 88 L ed 1283, 153 ALR 245 (1944), upon this very ground. In the light of Supreme Court decisions in the recent past, this court is not in a position to determine the issue presented by the sixth question because it is not squarely before this court and because further interpretation of Supreme Court decisions may occur prior to this court having to determine the issue.

The decision on the question presented by the petition for rehearing does not alter in any respect the earlier decision made by this court, which is affirmed. The plaintiff having presented a form of decree in accordance with the prior decision herein, this court will enter that decree forthwith.