## OLYMPIA BREWING COMPANY *v.*
## DEPARTMENT OF REVENUE

William H. Kinsey, Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland, represented plaintiff.

Walter J. Apley, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered September 25, 1972.

CARLISLE B. ROBERTS, Judge.

This case arose on a complaint for a review of a

declaratory ruling of the Department of Revenue, issued pursuant to ORS 305.105, concerning the applicability of ORS chapter 318 and 15 USC § 381 (1959) (often entitled the Interstate Income Act and cited as PL 86-272). The facts relating to plaintiff's business activities in the State of Oregon were stipulated. The question before the court is whether plaintiff is subject to Oregon's corporation income tax, ORS chapter 318, beginning with the year 1966.

Olympia Brewing Company is incorporated under the laws of the State of Washington with its home office and brewery located in Olympia, Washington. Olympia has no office, brewery, other operating facility or inventory of beer in the State of Oregon.

Plaintiff contracts with 16 independent distributors in Oregon to handle Olympia beer. Each distributor has an assigned area of primary responsibility. Orders emanating from the activities of Olympia's representatives in Oregon are submitted by the retail outlets, taverns and cocktail lounges to the Oregon distributor servicing the area. No orders are accepted by the representatives. To fill the orders received from retail outlets, the Oregon distributors send orders to the brewery at Olympia, Washington. These orders, upon acceptance, are filled by shipments from Olympia to Oregon via common or contract carrier.

Sales and distribution of Olympia beer by the distributors fall under two general classifications, "off" sales and "on" sales. The former sales are made for consumption off the premises and the latter for consumption on the premises. "On" sales include sales of draft beer from kegs supplied by the plaintiff. "Off" sales are made by retail outlets such as grocery stores and by taverns, and include beer sold in kegs by taverns

and by the distributors. These kegs are either one-half barrel size or one-quarter barrel size.

At all times, Olympia retains title to the kegs. When empty, the kegs are returned to the brewery at Olympia by the distributors via common carrier or contract carrier. The total number of one-half barrels shipped into Oregon by Olympia ranged from 101,310 in 1965 to 134,891 in 1969. The one-quarter barrels were not a factor until 1969, when 2,926 were delivered in Oregon. The original cost of the one-half stainless steel barrel at the Olympia brewery is approximately $38; the cost of the one-quarter barrel is $32; the useful life of the barrels is estimated at 10 years.

During the period of April to September, an inventory of beer for a 15-day period is normally maintained by the Oregon distributors; a 10-day inventory is maintained by most distributors for the balance of the year except during the Christmas holiday, when the inventory drops to a 5-day supply.

Applying these facts to the stipulated amount of average inventory maintained during the various seasons of the year, the Department of Revenue found that in 1969, for example, a 15-day inventory on hand would result in a daily average of 5,543 barrels having an undepreciated value in excess of $200,000. In the spring and fall of the year, when a 10-day inventory is maintained, the average value of the kegs would be in excess of $130,000 and a minimum inventory would be present around the first of each year in excess of $60,000.

The only employees of the plaintiff in this state from January 1, 1966, through the present, were 8 to 14 Oregon residents hired to promote the sales of the plaintiff's product. In the case of "off" sales through

retail outlets, the efforts of the representatives are directed toward effective display of Olympia beer at each retail outlet. Since the effectiveness of total display is lost if the supply of Olympia beer on hand in the retail outlet runs short, the representatives check the supplies so that outages or potential shortages can be cured by the retailer who places orders with the distributor servicing the area.

In the case of "off" sales through taverns, Olympia's representatives seek to influence the taverns to carry or to continue to carry Olympia beer for sales in bottles, cans and kegs. Where the taverns are already customers of Olympia, the representatives check the supply on hand and call outages or shortages to the attention of the tavern operator.

A primary objective of a brewery is to install its brand as the draft beer sold by as many taverns and cocktail lounges as possible. Olympia's representatives contact taverns and lounges to influence them to switch their draft beer brand to Olympia. Another duty is to encourage retention of Olympia beer where it is already carried. The same objective is sought as to the "on" sales of bottled beer.

The declaratory ruling (Income 1971-2) of the defendant concluded that the plaintiff's activities in Oregon exceeded the area of protection given by PL 86-272 and that the corporation was subject to the corporation income tax law of Oregon, beginning with the tax year 1966.

ORS chapter 318, the Corporation Income Tax Act of 1955, imposes a tax upon the net income of every corporation from sources within this state after August 3, 1955, other than income for which the corporation is subject to tax imposed by the Corporation Excise

Tax Law of 1929 (ORS chapter 317) which is measured by net income. Subsection (2) of ORS 318.020 reads:

> "(2) Income from sources within this state includes income from tangible or intangible property located or having a situs in this state and income from any activities carried on in this state, regardless of whether carried on in intrastate, interstate or foreign commerce."

ORS chapter 318 incorporates by reference the provisions of ORS 314.650 et seq., relating to the apportionment of business income by the ratio of Oregon property, payroll and sales to the corporation's total property, payroll and sales.

Without the enactment of PL 86-272, there would be no doubt that the plaintiff, having property, payroll and sales in the State of Oregon, would be subject to ORS chapter 317 or 318. See *N. W. States Portland Cement Co. v. State of Minnesota,* 358 US 450, 79 S Ct 357, 3 L Ed2d 421, 67 ALR2d 1292 (1959), holding that net income from the interstate operations of a foreign corporation may be subjected to state taxation, provided the levy is not discriminatory and is properly apportioned to local activities within the taxing state forming sufficient nexus to support the same.

Stimulated by the decision in *N. W. States Portland Cement Co., supra,* and *Brown-Forman Distillers Corp. v. Collector of Revenue,* 359 US 28, 79 S Ct 602, 3 L Ed2d 625 (1959), the Congress enacted PL 86-272, 15 USC § 381 (1959), on September 14, 1959, which, for sellers of tangible personal property, set the threshold of taxable activity at a level not reached by itinerant solicitation or by the procurement of sales contracts by independent contractors, if the resulting shipments are

made from out-of-state stocks. See Beaman, *Paying Taxes to Other States,* ch 6 (1963).

Public Law 86-272 (Act of September 14, 1959, 73 Stat 555, codified at 15 USC § 381 (1959)), § 101, provides in pertinent part:

"(a) No State, or political subdivision thereof, shall have power to impose, for any taxable year * * * a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person during such taxable year are either, or both, of the following:

"(1) the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State; and

"(2) the solicitation of orders by such person, or his representative, in such State in the name of or for the benefit of a prospective customer of such person, if orders by such customer to such person to enable such customer to fill orders resulting from such solicitation are orders described in paragraph (1).

"* * * * *

"(c) For purposes of subsection (a) of this Section, a person shall not be considered to have engaged in business activities within a State during any taxable year merely by reason of sales in such State, or the solicitation of orders for sales in such State, of tangible personal property on behalf of such person by one or more independent contractors, or by reason of the maintenance of an office in such State by one or more independent contractors whose activities on behalf of such person in such State consist solely of making sales, or solicitating orders for sales, of tangible personal property."

Plaintiff contends that all of its activities in Oregon come within the provisions of PL 86-272 and consequently no Oregon corporation income tax returns or payment of taxes can be required. The defendant contends that the activities of the salesmen transcend "solicitation," as that term is used in the statute, and that the maintenance of a continuing stock of beer kegs in the hands of the independent distributors and retailers in Oregon is a business activity which exceeds the protective provisions of PL 86-272.

Public Law 86-272 represents the first time in our country's history that Congress exercised its power to limit state taxation of interstate commerce. Beaman, *supra,* ch 6:3 (1963). In recommending the measure, the United States Senate Committee on Finance, in S Rep No 658, 86th Cong, 1st Sess 2548, 2551 (1959), stated:

> "Your committee recognizes that the bill it has reported is not a permanent solution to the problem that exists. It was not intended to be. Your committee, like the Select Committee on Small Business of the U. S. Senate, recognizes that the problem is a complex one which requires extensive and exhaustive study in arriving at a permanent solution fair alike to the States and to the Nation. Your committee believes, however, that the bill it has reported will serve as an effective stopgap or temporary solution while further studies are made of the problem."

The committee's reference to "problem" encompasses a number of specifically stated problems; i.e., the taxpayers' fear of taxation from "the mere solicitation of orders" without further activity in the state; lack of uniformity of state laws; burdens of compliance, including cost; and uncertainty of the minimum activity described by "nexus." S Rep No 658, *supra,* 2549-2550.

A strict construction of PL 86-272 is proper. *Cal-Roof Wholesale v. Tax Com.*, 242 Or 435, 447, 410 P2d 233 (1966), aff'g 2 OTR 91 (1965), and *Herff Jones Co. v. Tax Com.*, 247 Or 404, 411, 430 P2d 998 (1967), aff'g 2 OTR 207 (1965), hold that a broad interpretation of the statute is not warranted. S Rep No 658, *supra,* 2553, states:

> "The immunity provided by subsection (a) of section 1 of the bill will not be available to a person, however, if the business activities by salesmen within the State on behalf of such person are not limited during the taxable year to the solicitation of such orders or of orders described in paragraph (2) of subsection (a), or both. The provisions of subsection (a) of section 1 of the bill will not be available to grant immunity to a person where the orders are filled by a shipment or delivery from a stock of goods, warehouse, plant, or factory maintained by the person within the State."

It is concluded that any business activity within the taxing state which transcends the solicitation of orders nullifies the protection of PL 86-272. *American Refrig. Transit Co. v. Tax Com.*, 238 Or 340, 347, 395 P2d 127 (1964).

It has been stipulated that the Olympia salesmen (a) seek to influence retailers to purchase Olympia bottled, canned and draft beer; (b) seek to influence retailers to continue to carry or to switch to the use of Olympia draft beer; (c) with the retailer's permission, seek to obtain a maximum display of Olympia advertising at each retail outlet, including prominent display of the product; and (d) regularly inspect each retailer's supplies of beer in order to call attention to the retailer of a potential shortage thereof.

It is the defendant's contention that all these

activities except (a) exceed "solicitation of orders." Indeed, the defendant argues that the only activities protected by PL 86-272 are those related to filling an order blank, to be transmitted for approval to the plaintiff's office in Washington. Defendant's argument is understandable but unrealistic. In its present context, "solicitation" not only involves making an approach with a request or plea but also has the connotation "to induce," "to move to action," and is ordinarily accompanied by those devices which influence, create receptivity or claim the attention of the prospect. All the activities of plaintiff above described would come under these connotations. It can be argued that the plaintiff's total profit-making effort, in and out of the state, could be included under the broad generalization of "salesmanship," and it follows that the ever-present judicial problem of determining the acceptable or negative degree presents itself. As this court has said, "There are no tests [offered by PL 86-272] to be applied and each case must be decided on its own facts." *Iron Fireman Mfg. Co. v. Commission,* 3 OTR 33, 39 (1967).

The court finds the salesmen's activities to be within the proper province of "solicitation of orders." They are readily distinguishable from such acts as carrying parts for sale, making collections, instructing maintenance servicemen, repairing or replacing faulty goods and answering complaints, all of which, if properly done, tend to build up goodwill and to make subsequent solicitations easier, but are consequences of prior solicitation rather than a part of or preparation for the original solicitation.

The defendant has argued that *Clairol, Incorporated v. Kingsley,* 109 NJ Super 22, 270 A2d 702 (1970),

should be highly persuasive on this issue. That case, approved per curiam, without discussion, by the New Jersey Supreme Court, 57 NJ 199, is not completely clear. It may be distinguished and explained by the fact that PL 86-272 is applicable solely to a state's net income tax provision. New Jersey's corporation business tax act (NJSA 54:10A-1 et seq.), according to the Superior Court, cannot properly be so described, although it has some income tax elements. This court regards all the activities of Clairol's salesmen as acts of solicitation which, if performed in Oregon, would constitute nexus for taxation, lacking PL 86-272. But, in the light of traditional aspects of salesmanship, usual connotations of "solicit" and the practicalities of tax administration, all of the salesmen's activities appear to this court to come within PL 86-272's "solicitation of orders."

The defendant's declaratory ruling further finds:

"The taxpayer does hold title to property in the State of Oregon consisting primarily of beer barrel kegs, whose value according to the taxpayer, on an average monthly basis and year-end basis, consists of five thousand one-half barrel kegs having an aggregate value of $100,000 and 100 one-quarter barrel kegs having an aggregate value of $2,000. Other records available to the department indicate that at peak times of the year the monthly value of property consisting of beer kegs owned by the taxpayer in the State of Oregon is in excess of $200,000. There is in addition some minor property having a limited value, but the principal property is the aforementioned barrel kegs, the title to which is held by the taxpayer."

■ Is the plaintiff's regular use of the beer kegs such local "activity" or "involvement" as to constitute sufficient nexus under PL 86-272? In a carefully con-

sidered study of the subject, by Berndt Lohr-Schmidt, *Developing Jurisdictional Standards for State Taxation of Multistate Corporate Net Income,* 22 The Hastings LJ 1035 (1971), the author states, at 1041:

> "*Northwestern States* did suggest guidelines as to the various kinds of contacts with the taxing state which would be required to satisfy constitutional due process requirements for the valid imposition of a tax. In addition to requiring a reasonable conceptual relationship between the tax and the object or activity which is the subject of the tax, the *Northwestern States* Court spoke of taxpayers being 'sufficiently involved in *local* events' and of conducting '*substantial* income-producing activity in the taxing States' to point out respectively the *local quality* and the *substantial quantity* of income-producing activity or involvement necessary to forge the sufficient nexus."

One of the items of activity or involvement which provides nexus, discussed by the author (1043) is: "* * * the presence of an out-of-state corporation's property in the state, * * *." He compares the physical presence found in *American Refrig. Transit Co., supra,* with the lack of it noted by the United States Supreme Court in *National Bellas Hess, Inc. v. Department of Rev.,* 386 US 753, 87 S Ct 1389, 18 L Ed2d 505 (1967), and the "trivial" presence in *Miller Bros. Co. v. Maryland,* 347 US 340, 74 S Ct 535, 98 L Ed 744 (1954). He recognizes that the entire formula of substantiality may have a different meaning for different businesses (1051). Accordingly, "solicitation" may involve the use of some personal property, such as the salesmen's samples in *Smith Kline & French v. Tax Com.,* 241 Or 50, 403 P2d 375 (1965), and *State ex rel. CIBA Pharmaceutical Prods., Inc. v. State Tax Commission,* 382 SW2d 645 (Mo. 1964), but the meaning

of "solicitation" should be limited to those generally accepted or customary acts in the industry which lead to the placing of orders, not those which follow as a natural result of the transaction, such as collections, servicing complaints, technical assistance and training. Presale activities are distinguishable from similar activities that constitute services after the sale. The presence of plaintiff's kegs in Oregon is a result of sales and not a part of solicitation under PL 86-272.

Although the court recognizes that the use of the beer kegs in the delivery of beer is quite possibly an inseparable factor of the business, and that the kegs move in and out of the state with some frequency, the fact of their presence and use is fatal to plaintiff's cause, being outside the permitted activities of PL 86-272. Many businesses, by their very nature, cannot claim the benefits of the federal statute, and plaintiff's is one of them, since it appears essential to the conduct of the business to keep within the state at all times a substantial amount of personal property. That the stock is transitory does not relieve the taxpayer. *American Refrig. Transit Co., supra.* Plaintiff is engaged in an intrastate activity, after delivery of the goods, for the convenience of itself, the independent distributors and the retailers. The presence of the beer kegs has the same legal effect as if plaintiff loaned its vehicles for the local distribution of its product, obtaining its consideration as part of the price of the product.

The defendant's declaratory ruling (Income 1971-2), dated July 23, 1971, is affirmed for this reason.