Argued and submitted October 6, 1980, affirmed February 18, 1981

KULICK et al,
*Appellants,*
*v.*
DEPARTMENT OF REVENUE,
*Respondent.*

(TC 1195; 1196; 1197; 1198, SC 26841)

624 P2d 93

Eli Uncyk, New York, argued the cause for appellants. On the brief were Bodie, Minturn, Van Voorhees, Larson & Dixon, Prineville, and Simon, Sussman, Uncyk, Forseter & Borenkind, New York.

Ira W. Jones, Senior Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was James M. Brown, Attorney General.

LINDE, J.

## LINDE, J.

Taxpayers, residents of New Jersey and shareholders in an Oregon corporation, appeal from a decision of the Oregon Tax Court that affirmed assessments against them of personal income taxes on their shares of both the distributed and the undistributed income of the corporation. The issue is whether such an exertion of the state's taxing power over nonresident individuals exceeds the state's reach and seeks to take their property without due process of law, contrary to the 14th amendment. We conclude that Oregon may validly levy the tax and therefore affirm.

The Oregon Tax Court stated the case as follows:

"The defendant assessed Oregon personal income taxes, interest and penalties on each plaintiff's pro rata share of the distributed and undistributed taxable income of Timber Investors, Inc., an Oregon corporation, for the tax years 1973, 1974 and 1975. By agreement of the parties, the four cases were consolidated for purposes of briefing and oral argument.

"During the years in question, the four plaintiffs were equal shareholders in Timber Investors, Inc., an Oregon corporation which had elected, through its shareholders, to be taxed under the Subchapter S provisions of the federal Internal Revenue Code of 1954. During the years in question, none of the plaintiffs (all of whom are residents of New Jersey) filed Oregon personal income tax returns.

"The defendant's Orders Nos. I 77-23, I 77-24, I 77-25, and I 77-26, denying the plaintiffs' petitions for abatement of the taxes, interest and penalties, were issued on July 28, 1977. Plaintiffs appealed to this court pursuant to ORS 314.460 (1975 Replacement Part)."

*Kulick et al v. Dept. of Rev.,* 7 OTR 471, 472 (1978).[1]

---

[1] Under then ORS 314.460, cited by the tax court, a taxpayer's appeal was taken "from the determination of the department upon the application made by the taxpayer for refund or revision of any tax" under a preceding section governing appeals to the department for such refund or revision.

Other sections provided that an income tax assessment, if unpaid, "shall be a lien" on the taxpayer's property, ORS 314.417, enforceable by foreclosure, ORS 314.419; and the tax might also be collected under a warrant issued by the department, ORS 314.430, or as a debt, ORS 314.440. Plaintiffs' present constitutional attack is not on the use of any of these means of enforcing collection of the tax but on the tax itself.

■     The federal Subchapter S provisions to which the tax court referred permit a qualified "small business corporation" and its shareholders to elect personal taxation of the shareholders in lieu of the corporate income tax. 26 USCA §§ 1371-1378.[2] Under Oregon's tax laws, once a

---

[2] At the time of assessments here at issue, relevant sections provided:

26 USC § 1371 (1976):

"(a) Small business corporation

For purposes of this subchapter, the term 'small business corporation' means a domestic corporation which is not a member of an affiliated group (as defined in section 1504) and which does not—
(1) have (except as provided in subsection (e)) more than 10 shareholders;
(2) have as a shareholder a person (other than an estate and other than a trust described in subsection (f)) who is not an individual;
(3) have a nonresident alien as a shareholder; and
(4) have more than one class of stock."

26 USC § 1372 (1976):

"(a) Eligibility

Except as provided in subsection (f), any small business corporation may elect, in accordance with the provisions of this section, not to be subject to the taxes imposed by this chapter. Such election shall be valid only if all persons who are shareholders in such corporation—
(1) on the first day of the first taxable year for which such election is effective, if such election is made on or before such first day, or
(2) on the day on which the election is made, if the election is made after such first day, consent to such election.

"(b) Effect

If a small business corporation makes an election under subsection (a), then—
(1) with respect to the taxable years of the corporation for which such election is in effect, such corporation shall not be subject to the taxes imposed by this chapter (other than as provided by section 58(d)(2) and by section 1378) and, with respect to such taxable years and all succeeding taxable years, the provisions of section 1377 shall apply to such corporation, and
(2) with respect to the taxable years of a shareholder of such corporation in which or with which the taxable years of the corporation for which such election is in effect and, the provisions of sections 1373, 1374, and 1375 shall apply to such shareholder, and with respect to such taxable years and all succeeding taxable years, the provisions of section 1376 shall apply to such shareholder."

26 USC § 1373(a) (1976):

"The undistributed taxable income of an electing small business corporation for any taxable year shall be included in the gross income of the shareholders of such corporation in the manner and to the extent set forth in this section."

corporation and its shareholders have chosen federal Subchapter S tax treatment, the distributed and undistributed taxable income of the corporation "derived from or connected with sources in this state" likewise is taxed as income of the individual shareholders rather than corporate income, notwithstanding the fact that the shareholder or his own property is not employed in business, trade, or an occupation in Oregon.[3]

Taxpayers concede that even as nonresidents, they could constitutionally be reached by an Oregon tax on income derived from their own business or occupational activities in the state. This was settled in *Shaffer v. Carter,* 252 US 37, 40 S Ct 221, 64 L Ed 445 (1920), which sustained an Oklahoma income tax levied against an Illinois resident's income from an oil and gas business in Oklahoma. They point out, however, that not they but only the corporation, Timber Investors, Inc., did business in Oregon. Conceding further that Oregon could tax the income they derive from this Oregon business while still in the hands of the corporation, as Wisconsin did by "privilege" or withholding taxes sustained in *Wisconsin v.*

---

[3] ORS 316.127:

"(1) The adjusted gross income of a nonresident derived from sources within this state is the sum of the following:

. . . .

"(3) Income from intangible personal property, including annuities, dividends, interest and gains from the disposition of intangible personal property, constitutes income derived from sources within this state only to the extent that such income is from property employed in a business, trade, profession or occupation carried on in this state.

. . . .

"(5) Notwithstanding subsection (3) of this section, the distributed and undistributed taxable income of an electing small business corporation for federal income tax purposes derived from or connected with sources in this state does constitute income derived from sources within this state for a nonresident individual who is a shareholder of such a corporation, and a net operating loss of such corporation derived from or connected with sources in this state does constitute a loss or deduction connected with sources in this state for such a nonresident individual."

ORS 317.320:

"Distributed and undistributed taxable income of an electing small business corporation under section 1373 of the Internal Revenue Code, shall be deductible from gross income under this chapter and net operating losses of such corporation, to the extent attributed or made available to a shareholder, shall not be used by the corporation for further tax benefit."

*J. C. Penney Co.,* 311 US 435, 61 S Ct 246, 85 L Ed 267 (1940), and *International H. Co. v. Wisconsin Dept. of Taxn.,* 322 US 435, 64 S Ct 1060, 88 L Ed 1373 (1944), plaintiffs argue that Oregon's law has not availed itself of these or other devices,[4] and that the mere fact that the corporation's income accrues to their benefit or is distributed to them does not give the state a sufficient tie in order to tax nonresident shareholders.

Plaintiffs seek support for this view in what they perceive to be stricter standards for the extraterritorial exercise of state power in United States Supreme Court decisions concerning the jurisdiction of state courts, most recently *Rush v. Savchuk,* 444 US 320, 100 S Ct 571, 62 L Ed 2d 516 (1980); *World-Wide Volkswagen Corp. v. Woodson,* 444 US 286, 100 S Ct 580, 62 L Ed 2d 490 (1980); and *Kulko v. California Superior Court,* 436 US 84, 98 S Ct 1690, 56 L Ed 2d 132 (1978). The Department of Revenue, on the other hand, places continued reliance on the previously cited decisions sustaining the Wisconsin dividend taxes. The department also contends that by virtue of their own choice of Subchapter S taxation the shareholders have placed themselves in sufficient "contact" with Oregon to support the state's power to tax them on the corporation's income derived from this state. The tax court followed its earlier decision in *O'Neil v. Dep't of Rev.,* 6 OTR 467 (1976), which sustained the tax on nonresident shareholders under the Supreme Court's *J. C. Penney Co.* and *Harvester Co.* precedents, *supra,* adding the observation that the Court's willingness to disregard form for substance meanwhile had been demonstrated when *Spector Motor Service v. O'Connor,* 340 US 602, 71 S Ct 508, 95 L Ed 573 (1951) was overruled in *Complete Auto Transit, Inc. v. Brady,* 430 US 274, 97 S Ct 1076, 51 L Ed 2d 326 (1977).

It must be recognized that the laws sustained in the *J. C. Penney Co.* and *Harvester Co.* decisions can be distinguished insofar as they asserted the state's power to collect the tax from the corporation rather than the shareholders.

---

[4] Taxpayers note that some states, for instance, extend a tax option comparable to Subchapter S to small business corporations only if nonresident shareholders agree to pay their proportionate shares of the tax on the undistributed taxable income, *see e.g.* Okla St Ann ch 68 § 2365 (1978-79 Supp); Kan St Ann ch 79 § 79-32, 139 (1980 Supp).

It should be recognized also that the bounds within which the federal Constitution confines the reach of the state's taxing power have long been a body of law in search of a theory. The problem of territorial limits on taxation, as on other legislation or on adjudication, antedate and exist independently of the 14th amendment and its due process clause. *See Tharalson v. State Dept. of Rev.,* 281 Or 9, 17-21, 573 P2d 298 (1978). Since analysis of the problem has been placed under that protean rubric, the question of theory is how much survives of the original concern with territoriality as such and how much now concerns due process in the sense of fairness and considerations of economic reality.

In answer, *Wisconsin v. J. C. Penney Co., supra,* often is quoted for what it said as much as for what it held. Justice Frankfurter wrote for the Court:

"A state is free to pursue its own fiscal policies, unembarrassed by the Constitution, if by the practical operation of a tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly, civilized society.

"Constitutional provisions are often so glossed over with commentary that imperceptibly we tend to construe the commentary rather than the text. We cannot, however, be too often reminded that the limits on the otherwise autonomous powers of the states are those in the Constitution and not verbal weapons imported into it. 'Taxable event,' 'jurisdiction to tax,' 'business situs,' 'extraterritoriality,' are all compendious ways of implying the impotence of state power because state power has nothing on which to operate. These tags are not instruments of adjudication but statements of result in applying the sole constitutional test for a case like the present one. That test is whether property was taken without due process of law, or, if paraphrase we must, whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state. The simple but controlling question is whether the state has given anything for which it can ask return. . . ."

311 US at 444.[5] The Supreme Court of Louisiana, in a case somewhat analogous to ours, quoted these paragraphs to

---

[5] The opinion continued:

sustain that state's taxation of a gain imputed to a nonresident when he received a distribution of Louisiana assets of a Delaware corporation headquartered in Indiana. *Johnson v. Collector of Revenue,* 246 La 540, 165 S2d 466, 477 (1964). The court rejected the argument that the undoubted "protection, opportunities and benefits" afforded those assets in Louisiana were extended to their corporate owner rather than to the stockholder who upon liquidation became the beneficiary of their gain in value.

It may be that due process requires some minimal "nexus" or connection of the taxpayer with the taxing state over and above the economic connection of the taxable income itself. If neither the individual nor the legal entity through which his income is earned has this requisite nexus with the taxing state, neither might be taxed. In recent times the required nexus has been discussed mostly in the context of a nondomiciliary state's taxes on portions of a corporation's income from interstate commerce, where it is intertwined with concern about undue burdens on that commerce. *See, e.g., Exxon Corp. v. Wisconsin Dept. of Revenue,* 447 US 207, 100 S Ct 2109, 65 L Ed 2d 66 (1980), *Mobil Oil Corp. v. Commissioner of Taxes,* 445 US 425, 436-442, 100 S Ct 1223, 63 L Ed 2d 510 (1980); *National Bellas Hess, Inc. v. Department of Revenue,* 386 US 753, 87 S Ct 1389, 18 L Ed 2d 505 (1967). This court found a lessee's use of railroad cars within Oregon a sufficient nexus to tax a

---

"Ambiguous intimations of general phrases in opinions torn from the significance of concrete circumstances, or even occasional deviations over a long course of years, not unnatural in view of the confusing complexities of tax problems, do not alter the limited nature of the function of this Court when state taxes come before it. At best, the responsibility for devising just and productive sources of revenue challenges the wit of legislators. Nothing can be less helpful than for courts to go beyond the extremely limited restrictions that the Constitution places upon the states and to inject themselves in a merely negative way into the delicate processes of fiscal policy-making. We must be on guard against imprisoning the taxing power of the states within formulas that are not compelled by the Constitution but merely represent judicial generalizations exceeding the concrete circumstances which they profess to summarize."

311 US at 445. This was still in the early flush of the Roosevelt Court's efforts to excavate the buried constitutional premises and to free government from rigid judicial formulations of the due process and commerce clauses, six years before Frankfurter, J., led a return to one such formula in *Freeman v. Hewit,* 329 US 249, 67 S Ct 274, 91 L Ed 265 (1946).

portion of the rental income received by the lessor corporation. *Amer. Refrig. Transit Co. v. Tax Com.,* 238 Or 340, 395 P2d 127 (1964). *Compare Hamilton Corp. v. Tax Com.,* 253 Or 602, 609-610, 457 P2d 486 (1969).

This case differs insofar as no issue of interstate commerce is presented, and the putative taxpayers are nonresident individuals. As such, they invoke the phraseology of "minimum contacts" employed since *International Shoe Co. v. Washington,* 326 US 310, 66 S Ct 154, 90 L Ed 95 (1945), in decisions on state jurisdiction to render valid judgments against nonresidents rather than "jurisdiction" to tax them.

We cannot say that "nexus" intrinsically means anything different from "minimum contacts." Verbally, each term is no more than an inexact approach to dealing with the fact that geographic boundaries define the states as political entities, but they do not prevent outside events and acts from having effects within a state that justify application of the state's law, nor do they keep economic assets and opportunities within the state from enriching persons outside that may fairly be expected to share the accompanying social costs. Although "nexus" and "contacts" may be verbally synonymous, however, it need not follow that they are functionally identical in defining the conditions under which a state may tax and those under which it may adjudicate.

A summons to a nonresident to appear in a state's court is an individualized assertion of that state's power, usually on behalf of a private plaintiff, to accomplish a purpose that otherwise may be accomplished in some other court. When that assertion of jurisdiction is challenged, the due process issue concerns not the nonresident's substantive obligation, which theoretically should be the same in whatever court tries the case, but rather the legitimacy of that state's putting the nonresident to the inconvenience, the possible procedural drawbacks, and the judgment of what is asserted to be an inappropriate forum. A tax law, by contrast, is addressed to a general class of persons on whom the state means to place the substantive obligation to contribute to its revenues. It is not at all clear that the "contacts" that due process demands for the first

purpose are identical with the "nexus" required for the second.

The distinction between the two issues in fact appears in *Shaffer v. Carter, supra,* [6] and also in *International Shoe Co.* itself, where only the state's ability to collect from the taxpayer by a suit and judgment *in personam* was treated as problematic, while the taxpayer's liability for the tax itself was cursorily affirmed. *See also International H. Co. v. Wisconsin Dept. of Taxn., supra,* 322 US at 443-444. The due process clause plays yet another role when it is cited to exclude from a state's reach a part of the income of a taxpayer who is unquestionably subject to collection of the tax on the remainder. *See, e.g., Norfolk & Western R. Co. v. Missouri Tax Com.,* 390 US 317, 88 S Ct 995, 19 L Ed 2d 1201 (1968); *Hans Rees' Sons, Inc. v. North Carolina,* 283 US 123, 5 S Ct 385, 75 L Ed 879 (1931). In still different contexts, such as state efforts to make out-of-state sellers collect a use tax from customers within the taxing state, one can find language pointing either way. *Compare National Geographic Soc'y v. California Equal. Bd.,* 430 US 551, 97 S Ct 1386, 51 L Ed 2d 631 (1977), *with National Bellas Hess v. Department of Revenue, supra,* and *Miller Bros. v. Maryland,* 347 US 340, 74 S Ct 535, 98 L Ed 2d 744 (1954). The only certain lesson is that in matters of state taxation, "due process" objections must be handled with caution.

---

[6] "Under the 'due process of law' provision appellant makes two contentions: first, that the state is without jurisdiction to levy a tax upon the income of nonresidents; and, secondly, that the lien is invalid because imposed upon all his property, real and personal, without regard to its relation to the production of his income.

"These are separate questions, and will be so treated. The tax might be valid, although the measures adopted for enforcing it were not. Governmental jurisdiction in matters of taxation, as in the exercise of the judicial function, depends upon the power to enforce the mandate of the state by action taken within its borders, either in personam or in rem, according to the circumstances of the case, as by arrest of the person, seizure of goods or lands, garnishment of credits, sequestration of rents and profits, forfeiture of franchise, or the like; and the jurisdiction to act remains even though all permissible measures be not resorted to. [Citations omitted.]

"It will be convenient to postpone the question of the lien until all questions as to the validity of the tax have been disposed of."

252 US at 49.

■ The case before us does not present the issue of the state's ability to collect the challenged taxes by means of enforceable personal judgments against the nonresident plaintiffs. The department has not attempted to do so. Plaintiffs petitioned the department to abate the taxes and, upon denial of these petitions, plaintiffs invoked review by the Oregon Tax Court. The cases on state court jurisdiction from which plaintiffs quote are therefore of doubtful relevance. The only issue here is the validity of the tax itself, when assessed directly against nonresident shareholders upon income derived through their corporation from Oregon sources.

We doubt that the validity of the tax rests on the taxpayers' election of "Subchapter S" status, as the department contends, at least not in the sense that the act of election itself constitutes a "contact" with Oregon or a voluntary submission to an otherwise questionable authority. Once the choice to be taxed under Subchapter S is made with respect to the federal Internal Revenue Code, Oregon automatically applies the tax treatment prescribed by ORS 316.127(5) and ORS 317.320, *supra* note 3, though of course a taxpayer can avoid this effect by foregoing the federal Subchapter S option. The state's authority does not hinge upon this "consent."[7]

We think, however, that if a state's legitimate fiscal reach in the federal system indeed is more a matter of economic realities than of formal technicalities, as the Supreme Court's opinions tell us, then the state has not overreached its authority here. Sixty years ago, when nonresidents attacked Oklahoma's income tax as "a personal tax, or a 'subjective tax imposing personal liability upon the recipient of the income' " beyond the state's authority to impose upon a nonresident, the Court wrote:

"This argument, upon analysis, resolves itself into a mere question of definitions, and has no legitimate bearing upon any question raised under the Federal Constitution. For, where the question is whether a state taxing law contravenes rights secured by that instrument, the decision must

---

[7] If a search for "jurisdictional contacts" is needed, a more likely candidate in this instance might be found in the fact that Timber Investors, Inc., was an Oregon corporation, so that the shareholders' interests in its assets before or at the time of distribution have a taxable situs in this state.

> depend not upon any mere question of form, construction, or definition, but upon the practical operation and effect of the tax imposed. . . ."

*Shaffer v. Carter, supra,* 252 US at 55. The practical effect of the tax imposed here is identical as if it were imposed on the shareholder's gains in the hands of the corporation, as plaintiffs concede it could be under *Wisconsin v. J. C. Penney Co., supra,* or by one of the "jurisdictional" devices employed by other states. The "fiscal relation" to the opportunities and benefits available in Oregon as an "orderly, civilized society," in the language of *J. C. Penney Co.,* is exactly the same.

The effective collection of an income tax from non-resident shareholders can give rise to different issues, but there is no need to anticipate them here. On the record and briefs before us, plaintiffs' attack is directed at the tax itself, not at the enforcement of any resulting lien or debt, see *supra* note 1, and we express no view on the latter question. All we hold is that in demanding that shareholders of a closely held corporation instead of the corporation contribute to this state a tax on the financial gains derived from sources within the state, the state is not demanding the shareholders' property without the due process of law commanded by the 14th amendment.

Affirmed.