IN THE OREGON TAX COURT
MAGISTRATE DIVISION

ESTEE LAUDER SERVICES, INC.,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC-MD 982900D)

James Kleier, Preston, Gates and Ellis, San Francisco, argued the cause for Plaintiff. With him on the briefs were Michael Chellis, Preston, Gates and Ellis, Portland, and Julie Aguilar, Preston, Gates and Ellis, San Francisco.

James Wallace, Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant.

Decision for Defendant rendered October 30, 2000.

### JILL A. TANNER, Magistrate.

Plaintiff appeals Defendant's Conference Decision Letter, dated July 24, 1998, which required Plaintiff to include sales from its manufacturing subsidiaries in its numerator of the sales factor used in calculating the unitary group's Oregon state taxable income for tax years ending June 30, 1993, June 30, 1994, and June 30, 1995. The parties have stipulated the facts and submitted the matter to the court on cross motions for summary judgment. The court has considered the memoranda submitted and oral arguments made September 7, 2000, in the conference room of the Oregon Tax Court, Salem, Oregon.

## STATEMENT OF FACTS

Plaintiff, Estee Lauder Services, Inc., is one of 10 corporations owned by EJL Corporation. Those 10 corporations are commonly labeled brother/sister corporations because they are owned by the same entity, EJL Corporation. The 10 corporations, headquartered in New York, are evenly split between two groups collectively referred to as "Service Corporations" and "Manufacturing Corporations." Estee Lauder Services, Inc., is one of the five corporations referred to as Service Corporations. Service Corporations had nexus with the State of Oregon during the fiscal tax years ending 1993, 1994, and 1995.

Prior to the tax years at issue, Service Corporations and Manufacturing Corporations entered into a Service Agreement (Agreement). Under the "cost plus" payment terms of the Agreement, Service Corporations agreed to:

> "make available, furnish and render to [Manufacturing Corporations] comprehensive sales, training, promotional and other services relating to the sale and marketing [of Manufacturing Corporations'] products, including but not limited to field selling, sales administration and in-store promotion and training (the foregoing specific and general services are collectively referred to hereafter as the 'Service Functions')."

In the area of sales, Service Corporations' employees "regularly assisted the Retailers in completing and submitting Manufacturing Corporations' order forms" and at times

actually completed the order forms that were transmitted to EJL's plant in New York for formal acceptance, rejection, or modification. In order to ensure that sufficient stock was available to meet customer demand, Service Corporations' employees set up a six-month stock plan and back-order policy with Retailers, which included information regarding inventory and production planning for Manufacturing Corporations. In addition, Service Corporations' employees "summarized monthly and yearly sales and provided information regarding Purchase with Purchase (PWP) and Gift with Purchase (GWP) programs" for Retailers. A monthly itinerary was prepared by Service Corporations' employees to assist Manufacturing Corporations in accurately forecasting sales and measuring retail store brand loyalty.

Manufacturing Corporations' products were shipped by "common carrier freight collect, F.O.B. seller's plant, title passing to the retail store upon delivery to a carrier." The products of Manufacturing Corporations were sold to department stores (Retailers) located in Oregon. Promotional items remained the property of Manufacturing Corporations until distributed to the customer or disposed of in accordance with the terms of the contracts between the Manufacturing Corporations and the Retailers.

Under the terms of the Service Agreement, Service Corporations was obligated to "perform and provide the Service Functions in a manner designed to best promote the marketing and sales of [Manufacturing Corporations'] products." The Service Corporations "through its employees shall exercise its independent discretion, judgment, and expertise in performing and providing the Service Functions." In support of the marketing and sales responsibilities, certain Service Corporations' employees "held monthly counter manager meetings or schools demonstrating new products and presenting sales techniques to Retailers' employees" and "recommended where and how to display new products," including setting "sales goals for new items and companion products." Certain Service Corporations' employees "assisted in making advertising arrangements for the Manufacturing Corporations"; however, Manufacturing Corporations finalized all advertising contracts.

Service Corporations was permitted to provide services to other entities in addition to Manufacturing Corporations, but Service Corporations was required to carry out their contractual obligations in a timely and satisfactory manner. The Agreement included a nonagency provision stating that: "This Agreement shall not be construed to constitute either party hereto as the agent of the other party for any purpose, and it is understood that neither party hereto shall have any power or authority to enter into any agreements, or otherwise to make any commitments, on behalf of the other party in consequence of the existence hereof." Manufacturing Corporations had no employees working in Oregon during the tax years at issue.

As a result of Defendant's income tax audit for the three tax years before the court, certain adjustments were made to the state taxable income reported by the unitary group, which included Service Corporations and Manufacturing Corporations. Plaintiff agreed to various adjustments to the three apportionment factors (property, payroll, and sales) with the exception of the requirement that the numerator of the sales factor include the Oregon sales of Manufacturing Corporations. After the completion of its audit, Defendant issued Notices of Deficiency, dated February 20, 1998. Plaintiff appealed to the Oregon Department of Revenue. After its appeal was denied, Plaintiff timely filed its Complaint with the court on October 22, 1998.

## ISSUE

Shall Manufacturing Corporations' Oregon destination sales be included in the numerator of the sales apportionment factor for the unitary group (Manufacturing Corporations and Service Corporations)?

## ANALYSIS

■ Oregon imposes a tax on the taxable income of every corporation that derives income from sources in Oregon, including "[i]ncome from tangible or intangible personal property located or having a situs in this state and income from any activities carried on in this state." ORS 318.020.[1]

---

[1] Unless otherwise noted, all references to Oregon Revised Statutes (ORS) are to 1993. Unless otherwise noted, the 1995 statutes were not amended from the 1993 version.

Incorporated by ORS 318.031, ORS 314.650 to 314.670[2] set forth the formulas for apportioning income earned by multistate corporations that can be attributed to Oregon.[3]

■ Federal law limits the state's ability to tax in three ways. First, the Due Process Clause requires some definite link or minimum connection (nexus) between Oregon and a multistate corporation's activities in Oregon to allow this state to assert its taxing power. *See Quill Corp. v. North Dakota*, 504 US 298, 307, 112 S Ct 1904, 119 L Ed 2d 91 (1992). Second, the Commerce Clause prohibits Oregon from exercising its taxing power where the taxation results in an undue burden on interstate commerce. *See Complete Auto Transit, Inc. v. Brady*, 430 US 274, 275 n 2, 97 S Ct 1076, 51 L Ed 2d 326 (1977). The third limitation on Oregon's ability to tax a corporation's income and in this case the basis challenged by the parties is 15 USC sections 381 through 384, commonly known as Public Law (PL) 86-272, which provides that a corporation lacks the requisite nexus for a state's taxation whose sole business activity in that state is the solicitation for orders of tangible personal property. *See* OAR 150-318.202(2)(1)(c).

Estee Lauder Services, Inc., is part of a unitary group, headed by EJL, which is "engaged in business activities that constitute a single trade or business" with other corporations. *See* ORS 317.705(2). Service Corporations, which includes Estee Lauder Services, Inc., is an affiliated group of corporations connected through stock ownership and a common parent. *See* ORS 317.705(1) (referring to IRC section 1504, which sets forth additional requirements).

■ The members of an affiliated group are not treated as a single "taxpayer for purposes of determining whether any member of the group is taxable in [Oregon]." ORS 317.715(3)(b). For example, where corporations A, B, and C

---

[2] Or Laws 1993, ch 813, § 4 amended ORS 314.665, adding subsections (3) and (5), which apply to tax years 1994 and following. Or Laws 1995, ch 176, § 1 amended ORS 314.665, adding subsection (6).

[3] The apportionment formulas were adopted in accordance with the Uniform Division of Income for Tax Purposes Act and the Multistate Tax Compact in an effort to create a uniform taxing scheme among the states and to avoid double taxation of multistate corporations. *See* ORS 314.605 to 314.670; ORS 314.675; ORS 314.705 to 314.710 (1995).

are a unitary group and only corporation C is doing business in Oregon, the apportionment provisions of ORS 314.650-314.670[4] are applied to corporation C's business activities to determine the factors included in the numerator. *See* OAR 150-317.715(3)(b)(2).

██ In apportioning business income, the sales factor is determined by a fraction, "the numerator of which is the total sales of the [corporation] in this state during the tax period, and the denominator of which is the total sales of the [corporation] everywhere during the tax period." ORS 314.665. There is a lack of nexus when a corporation's only activities in Oregon are protected by PL 86-272. *See* OAR 150-314.665(1)-(B) (1)(b). That is, it is improper to include a corporation's total sales in Oregon in the numerator of the sales factor when the corporation's only connection with this state is through "mere solicitation of sales by in-state sales persons." OAR 150-314.665(1)-(B) (1)(b).[5] However, if the corporation's activities in this state exceed the protection of PL 86-272, Oregon obtains jurisdiction to tax.[6] *See* OAR 150-314.665(1)-(B) (1)(c).

Because the department included Manufacturing Corporations' Oregon income in the numerator of its sales factor, Estee Lauder Services, Inc., on behalf of Services Corporations, appeals. *See* ORS 314.650-.670.[7] Whether the department's inclusion was proper depends on whether Manufacturing Corporations' income is subject to Oregon taxation or is protected by PL 86-272.

PL 86-272[8] provides, in relevant part:

"Sec. 101. (a) No State * * * shall have power to impose * * * a net income tax on the income derived within such

---

[4] *See* footnote 2.

[5] The 1995 rule states that the protection "applies to taxpayers whose only Oregon activity is the solicitation of sales of tangible personal property." OAR 150-314.665(1)-(B) (1)(b) (1995).

[6] Protection is "not lost when a business engages in de minimis activities unrelated to the solicitation of orders * * * where its only other activities are those protected by PL 86-272." OAR 150-314.665(2)-(A) (6)(e) (1995) (listing examples of immune activities).

[7] *See* footnote 2.

[8] 15 USC §§ 381-384.

State by any person from interstate commerce if the only business activities within such State by or on behalf of such person during such taxable year are either, or both of the following:

"(1) the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State; and

"* * * * *

"(c) For purposes of subsection (a), a person shall not be considered to have engaged in business activities within a State during any taxable year merely by reason of sales in such State, or the solicitation of orders for sales in such State, of tangible personal property on behalf of such person by one or more independent contractors, or by reason of the maintenance of an office in such State by one or more independent contractors whose activities on behalf of such person in such State consist solely of making sales, or soliciting orders for sales, of tangible personal property.

"(d) For purposes of this section-

"(1) the term 'independent contractor' means a commission agent, broker or other independent contractor who is engaged in selling, or soliciting orders for the sale of, tangible personal property for more than one principal and who holds himself out as such in the regular course of his business activities; and

"(2) the term 'representative' does not include an independent contractor."

The court begins its analysis of the relationship between Services Corporations and Manufacturing Corporations using the guidelines provided by PL 86-272.

■ PL 86-272 provides immunity from state taxation to certain in-state activities if conducted by an independent contractor that would not otherwise be granted if the in-state activities were performed directly by a taxpayer.[9] An independent contractor as defined in PL 86-272 must engage in

---

[9] A company will not lose immunity if its independent contractors engage in soliciting sales, making sales, and maintaining an office. *See* OAR 150-318.020(2)(1)(c) (incorporating "Information Concerning Practices of Multistate Tax Commission States Under Public Law 86-272" adopted July 11, 1986, *reprinted in* Tax Mgmt. (BNA) No. 1410, at 6201).

the selling or solicitation activities for more than one principal. Although under the terms of the Agreement, Service Corporations was permitted to provide "Service Functions" for more than one entity, it did not. Because it did not engage in selling or soliciting orders for more than one principal nor did it hold itself out as representing more than one principal, Service Corporations was not an independent contractor. *See Hallmark Marketing Corp. v. Dept. of Rev.*, OTC-MD No. 981870A (Oct 11, 2000) (discussing lack of plurality as to principals).

Plaintiff alleges that the court cannot label Service Corporations as an "agent" because the Agreement prohibits it. Service Corporations and Manufacturing Corporations, in accordance with the terms of their Agreement, did not consent to an agency relationship. In addition, Plaintiff alleges that the requisite control was not present because Service Corporations' actions could not bind Manufacturing Corporations to the placing of an order. The printed order forms clearly stated that Service Corporations "does not bind Manufacturing Corporations to the filing of any order."

■ In evaluating the relationship between Service Corporations and Manufacturing Corporations, the court must consider the totality of Service Corporations' activities within the state. The existence of an agency relationship is solely a question of fact. Agency has been defined as the relationship that results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control. *Restatement (Second) of Agency* § 1 (1958). Oregon courts have held that the "single most important factor is the right to control or interfere with the manner and method of accomplishing the result—not the actual control." *Herff Jones v. State Tax Comm.*, 247 Or 404, 409, 430 P2d 998 (1967). Service Corporations did not market or sell competing products; it was the captive selling entity of Manufacturing Corporations. It performed many customer services: it assisted in setting up the advertising program, displaying the product, and monitoring product inventory, all with the goal of placing orders for and selling products of Manufacturing Corporations. At times during the tax years at issue, Services Corporations' employees used the stationery of Manufacturing Corporations, whereby the recipients of that

correspondence presumably inferred that Service Corporations had the authority to represent Manufacturing Corporations. Those activities, despite the written Agreement, combine in sum to characterize Service Corporations as Manufacturing Corporations' sales representative.

Plaintiff contends that there can be no right of attribution between the two entities solely because they have common ownership making them affiliates. The principle, developed from *In Appeal of Joyce, Inc.*,[10] states that the unitary relationship between entities does not automatically establish nexus on all of the corporate entities in the unitary group. Plaintiff asks this court to look at the form in which it has divided its manufacturing and selling activities between two groups of corporations and conclude that its state taxable income should be apportioned only according to the form.

■ Although the court agrees with Plaintiff that an automatic right of attribution does not exist solely based on the common ownership of the entities, the activities of affiliates may be attributable despite the form of corporate organization utilized. The Oregon Supreme Court concluded that a business should not "stand in a better position for purposes of determining income merely because it chooses to use a multiple corporation organizational scheme." *Coca Cola Co. v. Dept. of Rev.*, 271 Or 517, 528, 533 P2d 788 (1975). Following the analysis in *Coca Cola*, the court concludes that Plaintiff's combined unitary business income should be apportioned without regard to the "multiple corporation organizational scheme" in which it conducted its activities within the state of Oregon. *Id*. Service Corporations maintained an active business presence in Oregon during the tax years before the court. All of Service Corporations' activities were undertaken

---

[10] [1966-1976 Transfer Binder] Cal St Tax Rptr (CCH) ¶ 203-525 (Nov 23, 1966). As a member of the Multistate Tax Commission, Oregon recognizes the principle set forth in *Joyce*; however, Oregon has not technically adopted the principle of law set forth in the case. *Compare* "Information Concerning Practices of Multistate Tax Commission States Under Public Law 86-272" adopted July 11, 1986, *reprinted in* Tax Mgmt. (BNA) No. 1410, at 6201 (incorporated into OAR 150-318.020(2)(1)(c)), *with* "Statement of Information Concerning Practices of Multistate Tax Commission and Signatory States Under Public Law 86-272," 2nd ed, adopted July 29, 1994, *reprinted in* Tax Mgmt. (BNA) No. 1410 at 6401.

solely to generate sales for Manufacturing Corporations. Service Corporations' activities on behalf of Manufacturing Corporations created taxable nexus within Oregon not only for Service Corporations but the entire unitary group. The sales operations of the Service Corporations were "so inextricably connected" to the Manufacturing Corporations "that to state that the profits of one were not dictated by the operations of the other would be inconceivable." *Id.* at 525.

 Having concluded that Services Corporations is a sales representative for Manufacturing Corporations and Services Corporations' activities are attributable to Manufacturing Corporations, the court next turns to whether Services Corporations' activities come within the immunity offered by PL 86-272. Plaintiff argues that even if Service Corporations was the sales representative for Manufacturing Corporations under PL 86-272, only the in-state activities of Manufacturing Corporations that are conducted by or on behalf of it by Service Corporations can be considered. PL 86-272 states that sales representatives who represent a single principal are subject to the same limitations as employees, which in this case requires that for the in-state activities of Services Corporations to be immune from taxation the activities must be solely limited to solicitation and the ancillary activities that facilitate the request for an order. *See Wisconsin Department of Revenue v. William Wrigley, Jr., Co.*, 505 US 214, 112 S Ct 2447, 120 L Ed 2d 174 (1992).[11]

Solicitation was defined in *Wrigley* to include not only verbal requests for orders but "any speech or conduct that implicitly invites an order." *Id.* at 223. The court cautioned that solicitation should not be so narrowly interpreted to cover only actual requests for purchases or the actions that are absolutely essential to making those requests, and clarified that solicitation includes the entire process associated with inviting an order. *See id.* at 224, 228-29. Activities ancillary to solicitation serve no independent business function

---

[11] The Tax Court's definition of "solicitation" adopted prior to the United States Supreme Court's decision in *Wrigley* included those acts that precede and lead to the placing of orders as opposed to activities that follow the placing of an order (post-sale activities). *See Smith Kline & French v. Tax Com.*, 241 Or 50, 403 P2d 375 (1965). The *Wrigley* decision rejected the pre-sale and post-sale distinction. *See Wrigley*, 505 US at 230.

apart from their connection to the soliciting of orders. *See id.* at 228. Those ancillary activities include training and evaluation of sales representatives. *See id.* at 234. Even though some activities may inevitably help to increase sales, such as approving or accepting orders or using agency stock checks or any other instrument or process by which sales are made within the state by sales personnel, those activities are not ancillary to solicitation. *See id.* at 229, 233-34. That is, they serve a business function extending beyond solicitation and "cannot be converted into 'solicitation' by merely being assigned to sales [representatives]." *See id.* at 229 (citing *Herff Jones Co. v. Tax Com.*, 247 Or 404, 430 P2d 998 (1967)).

Service Corporations actively solicited the sale of cosmetics manufactured by Manufacturing Corporations. Under PL 86-272 as construed by *Wrigley*, soliciting orders for sales by any type of advertising, passing orders on to the manufacturing office, and checking inventories are all protected activities. It is the numerous inventory related activities that Defendant alleges exceeded the immunity offered by PL 86-272. Service Corporations' inventory activities included setting up a six-month stock plan and back-order policy with Retailers to provide information regarding inventory and production planning for Manufacturing Corporations. Service Corporations' employees summarized monthly and yearly sales, provided information regarding Purchase with Purchase and Gift with Purchase programs for Retailers, and prepared a monthly itinerary to assist Manufacturing Corporations in accurately forecasting sales and measuring retail store brand loyalty.

The court agrees that Service Corporations' inventory management activities were extensive. Some of those activities, such as forecasting, measuring brand loyalty, and long-term inventory planning, were engaged in apart from soliciting requests for orders and were not ancillary to solicitation. Such activities are not protected by PL 86-272.

As in *Wrigley*, Services Corporations argues that its activities, if not ancillary to solicitation, were *de minimis. See Wrigley*, 505 US at 232, 235 (defining *"de minimis"* as an activity that "establishes a nontrivial connection with the

taxing State"). Having found that, taken together, the activities were not *de minimis*, the *Wrigley* court found it unnecessary to determine whether each activity on its own was *de minimis*. *See id.* Similarly, Services Corporations' activities, taken together, are not *de minimis* and destroy protection under PL 86-272.

Defendant argues that the presence of Manufacturing Corporations' promotional samples[12] in Oregon exceed the protection offered by PL 86-272 under the analysis of *Olympia Brewing Co.*, 5 OTR 99 (1972), *aff'd*, 266 Or 309, 511 P2d 837 (1973). In support of that argument Defendant notes that those items remained the property of Manufacturing Corporations until given away, sold, or disposed of. In *Olympia*, the Tax Court held that because the presence of beer kegs in this state were "a result of sales and not a part of solicitation under PL 86-272," the plaintiff was not entitled to protection. 5 OTR at 110. However, to the extent that *Wrigley* broadened Oregon's presale interpretation of "solicitation," the reasoning in *Olympia* that those activities following as a natural result of the sales transaction do not come within the meaning of "solicitation" was overruled. *See id.*; *see also Wrigley*, 505 US at 230. In addition, the beer kegs in *Olympia* were of substantial value to the plaintiff and were repossessed and reused by the plaintiff, although neither Manufacturing Corporations nor Services Corporations repossessed the product samples.

*Wrigley* stated that "[p]roviding a car and a stock of free samples to salesmen is part of the 'solicitation of orders,' because the only reason to do it is to facilitate requests for purchases." *Wrigley*, 505 US at 229. The *Wrigley* court differentiated between activities that facilitate the requesting of orders and those that help to increase orders, such as repairing and servicing, for which "there is good reason to [provide] whether or not the company has a sales force." *Id.* Unlike the facts in *Wrigley*, where the representative provided free samples from stock, he also sold to retailers whose inventory was running low, Services Corporations did not keep a stock with which to fill Retailers' inventory. The *Wrigley* court found

---

[12] Manufacturing Corporations provided Gift with Purchase (free samples) and Purchase with Purchase (samples for a nominal charge) to Retailers' customers.

that those agency stock checks had a business purpose independent from soliciting orders. *See id.* at 233 (focusing on the fact that the retailers had to pay for the gum). In this case, promotional samples were usually part of an extensive advertising campaign that, as earlier discussed, is ancillary to the solicitation of sales. Tending to facilitate downstream (consumer) solicitation, promotional samples serve no independent business function apart from the solicitation of requesting orders. Those samples do not exceed the immunity offered by PL 86-272. Had those samples been the only link between Manufacturing Corporations and Oregon, Plaintiff would receive the immunity it is seeking.

The court, having decided that Plaintiff engaged in activities that were not solely limited to solicitation and the ancillary activities that facilitate the request for an order, concludes that the sales apportionment factor for the unitary group must include Manufacturing Corporations' Oregon destination sales.

## CONCLUSION

IT IS THE DECISION OF THE COURT that Plaintiff's Motion for Summary Judgment is denied.

IT IS FURTHER DECIDED that Defendant's Motion for Summary Judgment is granted.